(Slip Opinion) OCTOBER TERM, 2007 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MEACHAM ET AL. *v.* KNOLLS ATOMIC POWER LABORATORY, AKA KAPL, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 06–1505. Argued April 23, 2008—Decided June 19, 2008

When the National Government ordered its contractor, respondent Knolls, to reduce its work force, Knolls had its managers score their subordinates on "performance," "flexibility," and "critical skills"; these scores, along with points for years of service, were used to determine who was laid off. Of the 31 employees let go, 30 were at least 40 years old. Petitioners (Meacham, for short) were among those laid off, and they filed this suit asserting, *inter alia,* a disparate-impact claim under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U. S. C. §621 *et seq.* To show such an impact, Meacham relied on a statistical expert's testimony that results so skewed according to age could rarely occur by chance; and that the scores for "flexibility" and "criticality," over which managers had the most discretionary judgment, had the firmest statistical ties to the outcomes. The jury found for Meacham on the disparate-impact claim, and the Second Circuit initially affirmed. This Court vacated the judgment and remanded in light of its intervening decision in *Smith* v. *City of Jackson*, 544 U. S. 228. The Second Circuit then held for Knolls, finding its prior ruling untenable because it had applied a "business necessity" standard rather than a "reasonableness" test in assessing the employer's reliance on factors other than age in the layoff decisions, and because Meacham had not carried the burden of persuasion as to the reasonableness of Knolls's non-age factors.

*Held:* An employer defending a disparate-impact claim under the ADEA bears both the burden of production and the burden of persuasion for the "reasonable factors other than age" (RFOA) affirmative defense under §623(f)(1). Pp. 5–17.

(a) The ADEA's text and structure indicate that the RFOA exemp-

tion creates an affirmative defense, for which the burden of persuasion falls on the employer. The RFOA exemption is listed alongside one for bona fide occupational qualifications (BFOQ), which the Court has recognized to be an affirmative defense: "It shall not be unlawful for an employer . . . to take any action otherwise prohibited under subsections (a), (b), (c), or (e) . . . where age is a [BFOQ] reasonably necessary to the normal operation of the particular business, or where the differentiation is based on [RFOA] . . . ." §623(f)(1). Given that the statute lays out its exemptions in a provision separate from the general prohibitions in §§623(a)–(c), (e), and expressly refers to the prohibited conduct as such, it is no surprise that this Court has spoken of both the BFOQ and RFOA as being among the ADEA's "five affirmative defenses," *Trans World Airlines, Inc.* v. *Thurston*, 469 U. S. 111, 122. This reading follows the familiar principle that "[w]hen a proviso . . . carves an exception out of the body of a statute or contract those who set up such exception must prove it," *Javierre* v. *Central Altagracia*, 217 U. S. 502, 508. As this longstanding convention is part of the backdrop against which the Congress writes laws, the Court respects it unless there is compelling reason to think that Congress put the burden of persuasion on the other side. See *Schaffer* v. *Weast*, 546 U. S. 49, 57–58. The Court has given this principle particular weight in enforcing the Fair Labor Standards Act of 1968, *Corning Glass Works* v. *Brennan*, 417 U. S. 188, 196–197; and it has also recognized that "the ADEA [is] enforced in accordance with the 'powers, remedies, and procedures' of the FLSA," *Lorillard* v. *Pons*, 434 U. S. 575, 580. Nothing in §623(f)(1) suggests that Congress meant it to march out of step with either the general or specifically FLSA default rules placing the burden of proving an exemption on the party claiming it. Any further doubt would be dispelled by the natural implication of the "otherwise prohibited" language prefacing the BFOQ and RFOA defenses. Pp. 5–9.

(b) Knolls argues that because the RFOA clause bars liability where action is taken for reasons "other than age," it should be read as mere elaboration on an element of liability. But *City of Jackson* confirmed that §623(a)(2)'s prohibition extends to practices with a disparate impact, inferring this result in part from the presence of the RFOA provision. 544 U. S., at 239, 243. And *City of Jackson* made it clear that action based on a "factor other than age" is the very premise for disparate-impact liability, not a negation of it or a defense to it. Thus, it is assumed that a non-age factor was at work in such a case, and the focus of the RFOA defense is on whether the factor relied on was "reasonable." Pp. 10–11.

(c) The business necessity test has no place in ADEA disparate-impact cases; applying both that test and the RFOA defense would

entail a wasteful and confusing structure of proof. The absence of a business necessity enquiry does not diminish, however, the reasons already given for reading the RFOA as an affirmative defense. *City of Jackson* cannot be read as implying that the burden of proving any business-related defense falls on the plaintiff, for it confirmed that the BFOQ is an affirmative defense, see 544 U. S., at 233, n. 3. Moreover, in referring to "*Wards Cove*'s interpretation of identical language [in Title VII]," *City of Jackson* could not have had the RFOA clause in mind, for Title VII has no like-worded defense. And as *Wards Cove* did not purport to construe any Title VII defenses, only an over-reading of *City of Jackson* would find in it an assumption that *Wards Cove* has anything to say about statutory defenses in the ADEA. Pp. 12–15.

(d) *City of Jackson* confirmed that an ADEA disparate-impact plaintiff must "'"isolat[e] and identif[y] the *specific* employment practices that are allegedly responsible for any observed statistical disparities."'" 544 U. S., at 241. This is not a trivial burden, and it ought to allay some of the concern that recognizing an employer's burden of persuasion on an RFOA defense will encourage strike suits or nudge plaintiffs with marginal cases into court; but in the end, such concerns have to be directed at Congress, which set the balance by both creating the RFOA exemption and writing it in the orthodox format of an affirmative defense. Pp. 15–17.

461 F. 3d 134, vacated and remanded.

SOUTER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, KENNEDY, GINSBURG, and ALITO, JJ., joined, and in which THOMAS, J., joined as to Parts I and II–A. SCALIA, J., filed an opinion concurring in the judgment. THOMAS, J., filed an opinion concurring in part and dissenting in part. BREYER, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–1505

CLIFFORD B. MEACHAM, ET AL., PETITIONERS *v.*
KNOLLS ATOMIC POWER LABORATORY,
AKA KAPL, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[June 19, 2008]

JUSTICE SOUTER delivered the opinion of the Court.

A provision of the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U. S. C. §621 *et seq.*, creates an exemption for employer actions "otherwise prohibited" by the ADEA but "based on reasonable factors other than age" (RFOA). §623(f)(1). The question is whether an employer facing a disparate-impact claim and planning to defend on the basis of RFOA must not only produce evidence raising the defense, but also persuade the factfinder of its merit. We hold that the employer must do both.

I

The National Government pays private companies to do some of the work maintaining the Nation's fleet of nuclear-powered warships. One such contractor is respondent KAPL, Inc. (Knolls), the operator of the Government's Knolls Atomic Power Laboratory, which has a history dating back to the first nuclear-powered submarines in the 1950s. The United States Navy and the Department of Energy jointly fund Knolls's opera-

tions, decide what projects it should pursue, and set its annual staffing limits.  In recent years, Knolls has been charged with designing prototype naval nuclear reactors and with training Navy personnel to run them.

The demands for naval nuclear reactors changed with the end of the Cold War, and for fiscal year 1996 Knolls was ordered to reduce its work force.  Even after a hundred or so employees chose to take the company's ensuing buyout offer, Knolls was left with thirty-some jobs to cut.[1] Petitioners (Meacham, for short) are among those laid off in the resulting "involuntary reduction in force."  In order to select those for layoff, Knolls told its managers to score their subordinates on three scales, "performance," "flexibility," and "critical skills."[2]   The scores were summed, along with points for years of service, and the totals determined who should be let go.

Of the 31 salaried employees laid off, 30 were at least 40 years old.[3]  Twenty-eight of them sued, raising both disparate-treatment (discriminatory intent) and disparate-impact (discriminatory result) claims under the ADEA and

_____

[1] The Naval Reactors program had lowered Knolls's staffing limit by 108 people; as Knolls also had to hire 35 new employees for work existing personnel could not do, a total of 143 jobs would have to go.

[2] The "performance" score was based on the worker's two most recent appraisals.  The "flexibility" instruction read: "Rate the employee's flexibility within the Laboratory.  Can his or her documented skills be used in other assignments that will add value to current or future Lab work?  Is the employee retrainable for other Lab assignments?"  The "critical skills" instruction read: "How critical are the employee's skills to continuing work in the Lab?  Is the individual's skill a *key* technical resource for the [Naval Reactors] program?  Is the skill readily accessible within the Lab or generally available from the external market?" App. 94–95 (emphasis in original).

[3] For comparison: after the voluntary buyouts, 1,203 out of 2,063 salaried workers (or 58%) were at least 40 years old; and of the 245 who were at risk of involuntary layoff, and therefore included in the rankings scheme, 179 (or 73%) were 40 or over. *Meacham* v. *Knolls Atomic Power Laboratory*, 185 F. Supp. 2d 193, 203 (NDNY 2002).

state law, alleging that Knolls "designed and implemented its workforce reduction process to eliminate older employees and that, regardless of intent, the process had a discriminatory impact on ADEA-protected employees." *Meacham* v. *Knolls Atomic Power Laboratory*, 381 F. 3d 56, 61 (CA2 2004) *(Meacham I)*. To show a disparate impact, the workers relied on a statistical expert's testimony to the effect that results so skewed according to age could rarely occur by chance;[4] and that the scores for "flexibility" and "criticality," over which managers had the most discretionary judgment, had the firmest statistical ties to the outcomes. *Id.*, at 65.

The jury found for Meacham on the disparate-impact claim (but not on the disparate-treatment claim). The Court of Appeals affirmed, after examining the verdict through the lens of the so-called "burden shifting" scheme of inference spelled out in *Wards Cove Packing Co.* v. *Atonio*, 490 U. S. 642 (1989). See *Meacham I*, *supra,* at 74–76.[5] After Knolls sought certiorari, we vacated the judgment and remanded for further proceedings in light of *Smith* v. *City of Jackson*, 544 U. S. 228 (2005), decided

——————

[4] The expert cut the data in different ways, showing the chances to be 1 in 348,000 (based on a population of all 2,063 salaried workers); 1 in 1,260 (based on a population of the 245 workers at risk of layoff); or 1 in 6,639 (when the analysis was broken down by sections of the company). *Meacham I*, 381 F. 3d, at 64–65.

[5] Taking the *Wards Cove* steps in turn, the Court of Appeals concluded that the "jury could have found that the degree of subjective decision making allowed in the [layoff procedure] created the disparity," 381 F. 3d, at 74; that the employer had answered with evidence of a "facially legitimate business justification," a need "to reduce its workforce while still retaining employees with skills critical to the performance of [Knolls's] functions," *ibid.* (internal quotation marks omitted); and that petitioners would prevail nonetheless because "[a]t least one suitable alternative is clear from the record," that Knolls "could have designed [a procedure] with more safeguards against subjectivity, in particular, tests for criticality and flexibility that are less vulnerable to managerial bias," *id.*, at 75.

while Knolls's petition was pending.  See 544 U. S. 957 (2005).

On remand, the same Court of Appeals panel ruled in favor of Knolls, over a dissent.  461 F. 3d 134 (CA2 2006) (case below) *(Meacham II).*  The majority found its prior ruling "untenable" because it had applied the *Wards Cove* "business necessity" standard rather than a "reasonableness" test, contrary to *City of Jackson*; and on the latter standard, Meacham, the employee, had not carried the burden of persuasion. 461 F.3d, at 140–141, 144.[6]  In dissent, Judge Pooler took issue with the majority for confusing business justifications under *Wards Cove* with the statutory RFOA exemption, which she read to be an affirmative defense with the burden of persuasion falling on defendants.  461 F.3d, at 147, 149–152.[7]

Meacham sought certiorari, noting conflicting decisions assigning the burden of persuasion on the reasonableness of the factor other than age; the Court of Appeals in this case placed it on the employee (to show the non-age factor unreasonable), but the Ninth Circuit in *Criswell* v. *Western Airlines, Inc.*, 709 F. 2d 544, 552 (1983), had assigned

———————

[6] Distinguishing the two tests mattered, the Court of Appeals explained, because even though "[t]here may have been other reasonable ways for [Knolls] to achieve its goals (as we held in *[Meacham I]*), . . . the one selected was not unreasonable." *Meacham II*, 461 F. 3d, at 146 (citation and internal quotation marks omitted).  The burden of persuasion for either test was said to fall on the plaintiff, however, because "the employer is not to bear the ultimate burden of persuasion with respect to the legitimacy of its business justification." *Id.*, at 142 (citing *Wards Cove*, 490 U. S., at 659–660; internal quotation marks omitted). The majority took note of the textual signs that the RFOA was an affirmative defense, but set them aside because "*City of Jackson* . . . emphasized that there are reasonable and permissible employment criteria that correlate with age," thereby leaving it to plaintiffs to prove that a criterion is not reasonable.  461 F.3d, at 142–143.

[7] In Judge Pooler's view, a jury "could permissibly find that defendants had not established a RFOA based on the unmonitored subjectivity of [Knolls's] plan as implemented." *Id.*, at 153 (dissenting opinion).

it to the employer (to show the factor was a reasonable one). In fact it was in *Criswell* that we first took up this question, only to find it not well posed in that case. *Western Air Lines, Inc.* v. *Criswell*, 472 U. S. 400, 408, n. 10 (1985). We granted certiorari, 552 U. S. ___ (2007), and now vacate the judgment of the Second Circuit and remand.[8]

## II

### A

The ADEA's general prohibitions against age discrimination, 29 U. S. C. §§623(a)–(c), (e), are subject to a separate provision, §623(f), creating exemptions for employer practices "otherwise prohibited under subsections (a), (b), (c), or (e)." The RFOA exemption is listed in §623(f) alongside one for bona fide occupational qualifications (BFOQ): "It shall not be unlawful for an employer . . . to take any action otherwise prohibited under subsections (a), (b), (c), or (e) . . . where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age . . . ." §623(f)(1).

Given how the statute reads, with exemptions laid out apart from the prohibitions (and expressly referring to the prohibited conduct as such), it is no surprise that we have already spoken of the BFOQ and RFOA provisions as being among the ADEA's "five affirmative defenses," *Trans World Airlines, Inc.* v. *Thurston*, 469 U. S. 111, 122 (1985). After looking at the statutory text, most lawyers would accept that characterization as a matter of course,

---

[8] Petitioners also sought certiorari as to "[w]hether respondents' practice of conferring broad discretionary authority upon individual managers to decide which employees to lay off during a reduction in force constituted a 'reasonable factor other than age' as a matter of law." Pet. for Cert. i. We denied certiorari on this question and express no views on it here.

thanks to the familiar principle that "[w]hen a proviso . . . carves an exception out of the body of a statute or contract those who set up such exception must prove it." *Javierre* v. *Central Altagracia*, 217 U. S. 502, 508 (1910) (opinion for the Court by Holmes, J.); see also *FTC* v. *Morton Salt Co.*, 334 U. S. 37, 44–45 (1948) ("[T]he burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits . . ."); *United States* v. *First City Nat. Bank of Houston*, 386 U. S. 361, 366 (1967) (citing *Morton Salt*, *supra*, at 44–45). That longstanding convention is part of the backdrop against which the Congress writes laws, and we respect it unless we have compelling reasons to think that Congress meant to put the burden of persuasion on the other side. See *Schaffer* v. *Weast*, 546 U. S. 49, 57–58 (2005) ("Absent some reason to believe that Congress intended otherwise, therefore, we will conclude that the burden of persuasion lies where it usually falls, upon the party seeking relief").

We have never been given any reason for a heterodox take on the RFOA clause's nearest neighbor, and our prior cases recognize that the BFOQ clause establishes an affirmative defense against claims of disparate treatment. See, *e.g.*, *City of Jackson*, *supra*, at 233, n. 3; *Western Air Lines, Inc.*, *supra*, at 414–419, and nn. 24, 29. We have likewise given the affirmative defense construction to the exemption in the Equal Pay Act of 1963 for pay differentials based on "any other factor other than sex," *Corning Glass Works* v. *Brennan*, 417 U. S. 188, 196 (1974) (internal quotation marks omitted); and there, we took account of the particular weight given to the interpretive convention already noted, when enforcing the Fair Labor Standards Act of 1938 (FLSA), *id.*, at 196–197 ("[T]he general rule [is] that the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof").

This focus makes the principle of construction the more instructive in ADEA cases: "[i]n enacting the ADEA, Congress exhibited both a detailed knowledge of the FLSA provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation," *Lorillard* v. *Pons*, 434 U. S. 575, 581 (1978). And we have remarked and relied on the "significant indication of Congress' intent in its directive that the ADEA be enforced in accordance with the 'powers, remedies, and procedures' of the FLSA." *Id.*, at 580 (quoting 29 U. S. C. §626(b); emphasis deleted); see also *Fogerty* v. *Fantasy, Inc.*, 510 U. S. 517, 528 (1994) (applying reasoning of *Lorillard*); *Thurston*, *supra*, at 126 (same). As against this interpretive background, there is no hint in the text that Congress meant §623(f)(1) to march out of step with either the general or specifically FLSA default rules placing the burden of proving an exemption on the party claiming it.

With these principles and prior cases in mind, we find it impossible to look at the text and structure of the ADEA and imagine that the RFOA clause works differently from the BFOQ clause next to it. Both exempt otherwise illegal conduct by reference to a further item of proof, thereby creating a defense for which the burden of persuasion falls on the "one who claims its benefits," *Morton Salt Co.*, *supra*, at 44–45, the "party seeking relief," *Schaffer*, *supra*, at 57–58, and here, "the employer," *Corning Glass Works*, *supra*, at 196.

If there were any doubt, the stress of the idiom "otherwise prohibited," prefacing the BFOQ and RFOA conditions, would dispel it.[9] The implication of affirmative

———————

[9] We do not need to seek further relief from doubt by looking to the Equal Employment Opportunity Commission (EEOC) regulations on burdens of proof in ADEA cases. The parties focus on two of them, but we think neither clearly answers the question here. One of them the Government has disavowed as overtaken by our decision in *Smith* v.

defense is underscored by contrasting §623(f)(1) with the section of the ADEA at issue in *Public Employees Retirement System of Ohio* v. *Betts*, 492 U. S. 158 (1989), and by the way Congress responded to our decision there. In *Betts*, we said the issue was whether a provision in a former version of §623(f)(2), one about employee benefit plans, merely "redefine[d] the elements of a plaintiff's prima facie case," or instead "establish[ed] a defense" to what "otherwise would be a violation of the Act." *Id.*, at 181.[10]   Although the provision contained no "otherwise prohibited" kind of language, we said that it "appears on first reading to describe an affirmative defense." *Ibid.* We nonetheless thought that this more natural view (which

——————

*City of Jackson*, 544 U. S. 228 (2005), Brief for United States as *Amicus Curiae* 16, n. 1 (noting that 29 CFR §1625.7(d) (2007) "takes a position that does not survive" *City of Jackson*), for the regulation seems to require a showing of business necessity as a part of the RFOA defense. Compare 29 CFR §1625.7(d) ("When an employment practice, including a test, is claimed as a basis for different treatment . . . on the grounds that it is a 'factor other than' age, and such a practice has an adverse impact on individuals within the protected age group, it can only be justified as a business necessity"), with *City of Jackson, supra*, at 243 ("Unlike the business necessity test, which asks whether there are other ways for the employer to achieve its goals that do not result in a disparate impact on a protected class, the reasonableness inquiry includes no such requirement").   And the second regulation would take a bit of stretching to cover disparate-impact cases, for its text speaks in terms of disparate treatment. See 29 CFR §1625.7(e) (concerning use of the RFOA defense against an "individual claim of discriminatory treatment").   The EEOC has lately proposed rulemaking that would revise both of these regulations, eliminating any reference to "business necessity" and placing the burden of proof on the employer "[w]henever the exception of 'a reasonable factor other than age' is raised."   73 Fed. Reg. 16807–16809 (Mar. 31, 2008) (proposed 29 CFR §1625.7(e)).

[10] The provision read: "It shall not be unlawful for an employer . . . to observe the terms of . . . any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter . . . because of the age of such individual."   29 U. S. C. §623(f)(2) (1982 ed.).

we had taken in *Thurston*) was overridden by evidence of legislative history, by the peculiarity of a pretext-revealing condition in the phrasing of the provision (that a benefit plan "not [be] a subterfuge to evade the purposes" of the ADEA), and by the parallel with a prior case construing an "analogous provision of Title VII" (analogous because it also contained a pretext-revealing condition). 492 U. S., at 181. A year later, however, Congress responded to *Betts* by enacting the Older Workers Benefit Protection Act, Pub. L. 101–433, 104 Stat. 978, avowedly to "restore the original congressional intent" that the ADEA's benefits provision be read as an affirmative defense, *id.*, §101. What is instructive on the question at hand is that, in clarifying that §623(f)(2) specifies affirmative defenses, Congress not only set the burden in so many words but also added the phrase "otherwise prohibited" as a part of the preface (just as in the text of §623(f)(1)).[11] Congress thus confirmed the natural implication that we find in the "otherwise prohibited" language in §623(f)(1): it refers to an excuse or justification for behavior that, standing alone, violates the statute's prohibition. The amendment in the aftermath of *Betts* shows that Congress understands the phrase the same way we naturally read it, as a clear signal that a defense to what is "otherwise prohibited" is an affirmative defense, entirely the responsibility of the party raising it.

─────────────

[11] Congress surely could not have meant this phrase to contradict its express allocation of the burden, in the same amendment. But that would be the upshot of Knolls's suggestion that the only way to read the word "otherwise" as not redundant in the phrase "otherwise prohibited under subsection (a), (b), (c), or (e)" is to say that the word must refer only to §623(f)(1) itself, implying that §623(f)(1) must be a liability-creating provision for which the burden falls on the plaintiff. Brief for Respondents 33, and n. 7. Besides, this argument proves too much, for it implies that even the BFOQ exemption is not an affirmative defense.

## B

Knolls ventures that, regardless, the RFOA provision should be read as mere elaboration on an element of liability. Because it bars liability where action is taken for reasons "other than age," the argument goes, the provision must be directed not at justifying age discrimination by proof of some extenuating fact but at negating the premise of liability under §623(a)(2), "because of age."

The answer to this argument, however, is *City of Jackson*, where we confirmed that the prohibition in §623(a)(2) extends to practices with a disparate impact, inferring this result in part from the presence of the RFOA provision at issue here.[12] We drew on the recognized distinction between disparate-treatment and disparate-impact forms of liability, and explained that "the very definition of disparate impact" was that "an employer who classifies his employees without respect to age may still be liable under the terms of this paragraph if such classification adversely affects the employee because of that employee's age." 544 U. S., at 236, n. 6 (plurality opinion); *id.*, at 243 (SCALIA, J., concurring in part and concurring in judgment) (expressing agreement with "all of the Court's reasoning" in the plurality opinion, but finding it a basis for deference to the EEOC rather than for independent judicial decision). We emphasized that these were the kinds of employer activities, "otherwise prohibited" by §623(a)(2), that were mainly what the statute meant to test against the RFOA condition: because "[i]n disparate-impact cases . . . the allegedly 'otherwise prohibited' activity is not based on age," it is "in cases involving disparate-impact claims that the RFOA provision plays its principal role by precluding

---

[12] In doing so, we expressly rejected the so-called "safe harbor" view of the RFOA provision. See *City of Jackson*, 544 U. S., at 238–239 (plurality opinion); *id.*, at 252–253 (O'Connor, J., concurring in judgment) (describing "safe harbor" view).

liability if the adverse impact was attributable to a non-age factor that was 'reasonable.'"  *Id*., at 239 (plurality opinion).

Thus, in *City of Jackson*, we made it clear that in the typical disparate-impact case, the employer's practice is "without respect to age" and its adverse impact (though "because of age") is "attributable to a nonage factor"; so action based on a "factor other than age" is the very premise for disparate-impact liability in the first place, not a negation of it or a defense to it.  The RFOA defense in a disparate-impact case, then, is not focused on the asserted fact that a non-age factor was at work; we assume it was.  The focus of the defense is that the factor relied upon was a "reasonable" one for the employer to be using.  Reasonableness is a justification categorically distinct from the factual condition "because of age" and not necessarily correlated with it in any particular way: a reasonable factor may lean more heavily on older workers, as against younger ones, and an unreasonable factor might do just the opposite.[13]

—————

[13] The factual causation that §623(a)(2) describes as practices that "deprive or tend to deprive . . . or otherwise adversely affect [employees] . . . because of . . . age" is typically shown by looking to data revealing the impact of a given practice on actual employees.  See, *e.g.*, *City of Jackson*, 544 U. S., at 241 (opinion of the Court); cf. *Wards Cove Packing Co.* v. *Atonio*, 490 U. S. 642, 657, 658–659 (1989) (under Title VII, "specific causation" is shown, and a "prima facie case" is "establish[ed]," when plaintiff identifies a specific employment practice linked to a statistical disparity); *Watson* v. *Fort Worth Bank & Trust*, 487 U. S. 977, 995 (1988) (plurality opinion) (in Title VII cases, "statistical disparities must be sufficiently substantial that they raise . . . an inference of causation").

This enquiry would be muddled if the value, "reasonableness," were to become a factor artificially boosting or discounting the factual strength of the causal link, or the extent of the measured impact.  It would open the door to incoherent undershooting, for example, if defendants were heard to say that an impact is "somewhat less correlated with age, seeing as the factor is a reasonable one"; and it would be

### III

The Court of Appeals majority rejected the affirmative defense reading and arrived at its position on the burden of proof question by a different route: because it read our decision in *City of Jackson* as ruling out the so-called "business necessity" enquiry in ADEA cases, the court concluded that the RFOA defense "replaces" it and therefore must conform to its burden of persuasion resting on the complaining party. But the court's premise (that *City of Jackson* modified the "business necessity" enquiry) is mistaken; this alone would be reason enough to reject its approach. And although we are now satisfied that the business necessity test should have no place in ADEA disparate-impact cases, we agree with the Government that this conclusion does not stand in the way of our holding that the RFOA exemption is an affirmative defense. See Brief for United States as *Amicus Curiae* 25–27.

To begin with, when the Court of Appeals further inferred from the *City of Jackson* reference to *Wards Cove* that the *Wards Cove* burden of persuasion (on the employee, for the business necessity enquiry) also applied to the RFOA defense, it gave short shrift to the reasons set out in Part II–A, *supra,* for reading RFOA as an affirmative defense (with the burden on the employer). But we think that even on its own terms, *City of Jackson* falls short of supporting the Court of Appeals's conclusion.

Although *City of Jackson* contains the statement that "*Wards Cove*'s pre-1991 interpretation of Title VII's identical language remains applicable to the ADEA," 544 U. S., at 240, *City of Jackson* made only two specific references to aspects of the *Wards Cove* interpretation of Title VII that might have "remain[ed] applicable" in ADEA cases. One was to the existence of disparate-impact liability,

_____

overshooting to make them show that the impact is "not correlated with age, and the factor is reasonable, besides."

which *City of Jackson* explained was narrower in ADEA cases than under Title VII. The other was to a plaintiff-employee's burden of identifying which particular practices allegedly cause an observed disparate impact, which is the employee's burden under both the ADEA and the pre-1991 Title VII. See 544 U. S., at 241. Neither of these references, of course, is at odds with the view of RFOA as an affirmative defense.

If, indeed, *City of Jackson*'s reference to *Wards Cove* could be read literally to include other aspects of the latter case, beyond what mattered in *City of Jackson* itself, the untoward consequences of the broader reading would rule it out. One such consequence is embraced by Meacham, who argues both that the Court of Appeals was wrong to place the burden of persuasion for the RFOA defense on the employee, and that the court was right in thinking that *City of Jackson* adopted the *Wards Cove* burden of persuasion on what Meacham views as one element of an ADEA impact claim. For Meacham takes the position that an impact plaintiff like himself has to negate business necessity in order to show that the employer's actions were "otherwise prohibited"; only then does the RFOA (with the burden of persuasion on the employer) have a role to play. To apply both tests, however, would force the parties to develop (and the court or jury to follow) two overlapping enquiries: first, whether the employment practice at issue (based on a factor other than age) is supported by a business justification; and second, whether that factor is a reasonable one. Depending on how the first enquiry proceeds, a plaintiff might directly contest the force of the employer's rationale, or else try to show that the employer invoked it as a pretext by pointing (for example) to alternative practices with less of a disparate impact. See *Wards Cove*, 490 U. S., at 658 ("first, a consideration of the justifications an employer offers for his use of these practices; and second, the availability of alternative practices

to achieve the same business ends, with less racial impact"); see also *id.*, at 658–661.  But even if the plaintiff succeeded at one or the other, in Meacham's scheme the employer could still avoid liability by proving reasonableness.

Here is what is so strange: as the Government says, "[i]f disparate-impact plaintiffs have already established that a challenged practice is a pretext for intentional age discrimination, it makes little sense then to ask whether the discriminatory practice is based on reasonable factors *other than age.*"  Brief for United States as *Amicus Curiae* 26 (emphasis in original).  Conversely, proving the reasonableness defense would eliminate much of the point a plaintiff would have had for showing alternatives in the first place: why make the effort to show alternative practices with a less discriminatory effect (and besides, how would that prove pretext?), when everyone knows that the choice of a practice relying on a "reasonable" non-age factor is good enough to avoid liability?[14]  At the very least, developing the reasonableness defense would be substantially redundant with the direct contest over the force of the business justification, especially when both enquiries deal with the same, narrowly specified practice.  It is not very fair to take the remark about *Wards Cove* in *City of Jackson* as requiring such a wasteful and confusing structure of proof.

Nor is there any good way to read the same line from *City of Jackson* as implying that the burden of proving any business-related defense falls on the plaintiff; most obviously, this would entail no longer taking the BFOQ clause

———————

[14] See *City of Jackson*, 544 U. S., at 243 ("While there may have been other reasonable ways for the City to achieve its goals, the one selected was not unreasonable.  Unlike the business necessity test, which asks whether there are other ways for the employer to achieve its goals that do not result in a disparate impact on a protected class, the reasonableness inquiry includes no such requirement").

to be an affirmative defense, which *City of Jackson* confirmed that it is, see 544 U. S., at 233, n. 3. What is more, *City of Jackson* could not have had the RFOA clause in mind as "identical" to anything in Title VII (for which a *Wards Cove*'s reading might be adopted), for that statute has no like-worded defense. And as *Wards Cove* did not purport to construe any statutory defenses under Title VII, only an over-reading of *City of Jackson* would find lurking in it an assumption that *Wards Cove* has anything to say about statutory defenses in the ADEA (never mind one that Title VII does not have).

## IV

As mentioned, where *City of Jackson* did get help from our prior reading of Title VII was in relying on *Wards Cove* to repeat that a plaintiff falls short by merely alleging a disparate impact, or "point[ing] to a generalized policy that leads to such an impact." *City of Jackson*, 544 U. S., at 241. The plaintiff is obliged to do more: to "isolat[e] and identif[y] the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Ibid.* (quoting *Wards Cove*, *supra*, at 656; emphasis in original; internal quotation marks omitted). The aim of this requirement, as *City of Jackson* said, is to avoid the "result [of] employers being potentially liable for 'the myriad of innocent causes that may lead to statistical imbalances.'" 544 U. S., at 241 (quoting *Wards Cove*, *supra*, at 657; some internal quotation marks omitted). And as the outcome in that case shows, the requirement has bite: one sufficient reason for rejecting the employees' challenge was that they "ha[d] done little more than point out that the pay plan at issue [was] relatively less generous to older workers than to younger workers," and "ha[d] not identified any specific test, requirement, or practice within the pay plan that ha[d] an adverse impact on older workers." *City of Jackson*, *supra,* at 241.

Identifying a specific practice is not a trivial burden, and it ought to allay some of the concern raised by Knolls's *amici*, who fear that recognizing an employer's burden of persuasion on an RFOA defense to impact claims will encourage strike suits or nudge plaintiffs with marginal cases into court, in turn inducing employers to alter business practices in order to avoid being sued. See, *e.g.*, Brief for General Electric Co. as *Amicus Curiae* 18–31. It is also to the point that the only thing at stake in this case is the gap between production and persuasion; nobody is saying that even the burden of production should be placed on the plaintiff. Cf. *Schaffer*, 546 U. S., at 56 (burden of persuasion answers "which party loses if the evidence is closely balanced"); *id.*, at 58 ("In truth, however, very few cases will be in evidentiary equipoise"). And the more plainly reasonable the employer's "factor other than age" is, the shorter the step for that employer from producing evidence raising the defense, to persuading the factfinder that the defense is meritorious. It will be mainly in cases where the reasonableness of the non-age factor is obscure for some reason, that the employer will have more evidence to reveal and more convincing to do in going from production to persuasion.

That said, there is no denying that putting employers to the work of persuading factfinders that their choices are reasonable makes it harder and costlier to defend than if employers merely bore the burden of production; nor do we doubt that this will sometimes affect the way employers do business with their employees. But at the end of the day, *amici*'s concerns have to be directed at Congress, which set the balance where it is, by both creating the RFOA exemption and writing it in the orthodox format of an affirmative defense. We have to read it the way Congress wrote it.

\*    \*    \*

As we have said before, Congress took account of the

distinctive nature of age discrimination, and the need to preserve a fair degree of leeway for employment decisions with effects that correlate with age, when it put the RFOA clause into the ADEA, "significantly narrow[ing] its coverage." *City of Jackson*, 544 U. S., at 233. And as the outcome for the employer in *City of Jackson* shows, "it is not surprising that certain employment criteria that are routinely used may be reasonable despite their adverse impact on older workers as a group." *Id.*, at 241. In this case, we realize that the Court of Appeals showed no hesitation in finding that Knolls prevailed on the RFOA defense, though the court expressed its conclusion in terms of Meacham's failure to meet the burden of persuasion. Whether the outcome should be any different when the burden is properly placed on the employer is best left to that court in the first instance. The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BREYER took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

No. 06–1505

CLIFFORD B. MEACHAM, ET AL., PETITIONERS *v.*
KNOLLS ATOMIC POWER LABORATORY,
AKA KAPL, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[June 19, 2008]

JUSTICE SCALIA, concurring in the judgment.

I do not join the majority opinion because the Court answers for itself two questions that Congress has left to the sound judgment of the Equal Employment Opportunity Commission. As represented by the Solicitor General of the United States in a brief signed by the Commission's General Counsel, the Commission takes the position that the reasonable-factor-other-than-age provision is an affirmative defense on which the employer bears the burden of proof, and that, in disparate-impact suits brought under the Age Discrimination in Employment Act of 1967 (ADEA), that provision replaces the business-necessity test of *Wards Cove Packing Co.* v. *Atonio*, 490 U. S. 642 (1989).

Neither position was contrived just for this case. Indeed, the Commission has arguably held its view on the burden-of-proof point for nearly 30 years. See 44 Fed. Reg. 68858, 68861 (1979). Although its regulation applied only to cases involving "discriminatory treatment," 29 CFR §1625.7(e) (2007), even if that covers only disparate treatment, see *ante*, at 7–8, n. 9, the logic of its extension to disparate-impact claims is obvious and unavoidable. See Brief for United States as *Amicus Curiae* 16, n. 1. At the very least, the regulation does not contradict the

Commission's current position: It does not say that the employer bears the burden of proof *only* in discriminatory-treatment cases.

The Commission's view on the business-necessity test is newly minted, but that does not undermine it. The Commission has never expressed the contrary view that the factfinder must consider both business necessity *and* reasonableness when an employer applies a factor that has a disparate impact on older workers. In fact, before *Smith* v. *City of Jackson*, 544 U. S. 228 (2005), the Commission had not even considered the relationship between the two standards, because it used to treat the two as *identical*. See 29 CFR §1625.7(d). After *City of Jackson* rejected that equation, see 544 U. S., at 243, the Commission decided that the business-necessity standard plays no role in ADEA disparate-impact claims, see Brief for United States as *Amicus Curiae* 25–27, and has even proposed new rules setting forth that position, see 73 Fed. Reg. 16807–16809 (2008).

Because administration of the ADEA has been placed in the hands of the Commission, and because the agency's positions on the questions before us are unquestionably reasonable (as the Court's opinion ably shows), I defer to the agency's views. See *Raymond B. Yates, M. D., P. C. Profit Sharing Plan* v. *Hendon*, 541 U. S. 1, 24–25 (2004) (SCALIA, J., concurring in judgment). I therefore concur in the Court's judgment to vacate the judgment of the Court of Appeals.

# SUPREME COURT OF THE UNITED STATES

———————

No. 06–1505

———————

## CLIFFORD B. MEACHAM, ET AL., PETITIONERS *v.* KNOLLS ATOMIC POWER LABORATORY, AKA KAPL, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[June 19, 2008]

JUSTICE THOMAS, concurring in part and dissenting in part.

I write separately to note that I continue to believe that disparate-impact claims are not cognizable under the Age Discrimination in Employment Act of 1967, 29 U. S. C. §621 *et seq.* See *Smith* v. *City of Jackson*, 544 U. S. 228, 247–268 (2005) (O'Connor, J., joined by KENNEDY and THOMAS, JJ., concurring in judgment). Moreover, I disagree with the Court's statement that the "reasonable factors other than age" (RFOA) exception, §623(f)(1), is principally relevant in disparate-impact cases. Compare *City of Jackson*, *supra*, at 251–253 (opinion concurring in judgment), with *ante*, at 10–11 (citing *City of Jackson*, *supra*, at 239 (plurality opinion)). I therefore join only Parts I and II–A of the Court's opinion because I agree that the RFOA exception is an affirmative defense—when it arises in disparate-treatment cases. Here, although the Court of Appeals erred in placing the burden of proof on petitioners, I would nonetheless affirm because the only claims at issue are disparate-impact claims.