In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 07-2543

WAYNE DAVIS,

*Plaintiff-Appellant,*

*v.*

INDIANA STATE POLICE,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:07-087-LJM-WTL—**Larry J. McKinney**, *Judge.*

_____

ARGUED AUGUST 6, 2008—DECIDED SEPTEMBER 3, 2008

_____

Before EASTERBROOK, *Chief Judge*, and KANNE and
WOOD, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.    Wayne Davis, a State
Trooper in Indiana, resigned when 42 years old to take
another job. Two months later he decided that he had
made a mistake and asked for his old job back. The State
Police said no, telling Davis that he was too old—for ex-
troopers seeking reinstatement must "meet all the re-
quirements for police employees as specified in . . . 240 IAC

1-4-3". 240 Ind. Admin. Code §1-4-18(b)(4). Among the requirements in §1-4-3 is that the applicant be at least 21, and under 40, when hired. Davis contends in this suit that, by holding his age against him, Indiana violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–33a.

*EEOC v. Wyoming*, 460 U.S. 226 (1983), concludes that the ADEA applies to state law-enforcement officers. Political controversy ensued. In 1986 Congress enacted a temporary (and retroactive) exemption for law-enforcement officers. This provision had a sunset clause, and when the legislature was unable to agree on permanent text the temporary provision expired in 1993. But in 1996 Congress again adopted an exemption, this time without a sunset. Any hiring or retirement decision by a law-enforcement agency "pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter" is exempt from the ADEA. 29 U.S.C. §623(j)(2). Our opinions in *Kopec v. Elmhurst*, 193 F.3d 894 (7th Cir. 1999); *Minch v. Chicago*, 363 F.3d 615 (7th Cir. 2004); and *Minch v. Chicago*, 486 F.3d 294 (7th Cir. 2007), recount this history and sum up the legal conse-quence: A hiring plan that was in place before *EEOC v. Wyoming* is likely to be valid today—after all, the point of §623(j)(2) is to permit age discrimination that other-wise would violate the ADEA, and probably is not de-signed to evade portions of the ADEA other than the age rules. (This is how we understood "subterfuge" in *Minch*, see 363 F.3d at 623. The ADEA contains anti-retaliation clauses and other requirements in addition to the sections that forbid discrimination against older em-

ployees or applicants.) The district court therefore dismissed Davis's complaint under Fed. R. Civ. P. 12(b)(6).

Davis does not contend that Indiana's rules, which predate *EEOC v. Wyoming*, are "subterfuges" to evade the Act. Instead he contends that the decision not to rehire him is not one "pursuant to a bona fide hiring . . . plan". His principal argument is that Indiana's system is not "bona fide" because it is senseless; a fallback argument is that the decision not to rehire him, in particular, was not made "pursuant to" the state's age limits.

Indiana allows state troopers to work until age 65. Davis asks why a 2-month break in employment at age 42 should make him a pariah, when he would have been acceptable at age 43, 45, 50, 55, and 60 had he just stayed put. It is a good question, but not one for the federal judiciary. All §623(j)(2) requires is that the plan be "bona fide" and not a "subterfuge" to evade the ADEA. Whether a state's plan is *wise* is not material to the application of §623(j)(2). A plan is "bona fide" when it is real rather than a fable spun for the occasion. *Kopec*, 193 F.3d at 901.

In arguing that, to be bona fide, a plan must be sensible, Davis is asking the court to assume a managerial role that is alien to the idea of an anti-discrimination norm. As we say frequently in suits under employment-discrimination statutes: "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [federal law does] not interfere." *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir. 1987).

Davis equates "bona fide" with "rationally related to a legitimate objective" and in the process conflates statutory with constitutional criteria. Asked at oral argument whether he was challenging Indiana's rules under the equal protection clause of the fourteenth amendment, Davis's lawyer gave a negative answer.

A plan is "bona fide" when it sets out the real rules of decision, but Davis does not want Indiana to stand on rules. Instead he contests the very idea of rules. A fit person at age 41 is better suited to be a trooper than a flabby person at age 39. But problems of this kind are endemic to rules. As Justice Holmes put it, "[w]herever the law draws a line there will be cases very near each other on opposite sides." *United States v. Wurzbach*, 280 U.S. 396, 399 (1930). To observe that functionally indistinguishable situations are on opposite sides of a legal line is not to invalidate the line and demand that the state use a standard instead, for standards have problems of their own. Standards (for example, fitness rather than age) depend on the exercise of discretion. Who should wield that discretion, and why should they be trusted? Who guards the guardians?

A two-month break is short, and a state could choose to overlook it, but a federal doctrine converting a straightforward age line to a standard of reasonableness can't be limited to two-month breaks in employment. What of a six-month break? One year? Two years? How about a person who reaches age 65 but says that he is as fit and alert as the average 60-year-old trooper; may Indiana nonetheless end his employment? There is no one "right"

response to such questions, certainly none to be located in §623(j)(2). Congress could displace the state's choices (as the ADEA does for most jobs), but §623(j)(2) does not compel a state law-enforcement agency to make reasonable (or any) exceptions to an age-based plan. Nor does equal-protection analysis require exceptions for special circumstances; governments may base rules on the usual situations without exceptions for the unusual ones. See, e.g., *Vance v. Bradley*, 440 U.S. 93 (1979) (Constitution permits mandatory retirement at age 60 of all diplomats); *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307 (1976) (Constitution permits mandatory retirement at age 50 of all state police).

Davis's request for an exception is in tension with his second (and better) argument: That the statute *forbids* exceptions, or at least limits exceptions to those that are explicit parts of the plan. Section 623(j)(2) requires the state to act "*pursuant to* a bona fide hiring . . . plan" (emphasis added). It is not enough to *have* a plan.

Section 1-4-18, which spells out the procedure if a former trooper applies for reinstatement, has some curious language:

> The applicant shall meet all the requirements for police employees as specified in 240 IAC 1-4-2 and 240 IAC 1-4-3 subject to the approval of the superintendent and the board.

240 Ind. Admin. Code §1-4-18(b)(4). What does "subject to the approval of the superintendent and the board" mean? It could mean that the superintendent and board must decide whether the applicant satisfies the two listed

sections; that would be unproblematic. Another possibility, however, is that the phrase means something like "if the superintendent and the board decide to enforce those rules." A power to set the plan aside at will—to reject Davis as too old at age 42 while rehiring other ex-troopers at age 45 or 50—would mean that the decision is not pursuant to the age rules specified in §1-4-3. (We do not have a situation in which the plan itself creates exceptions.)

When dismissing Davis's complaint, the district court did not mention the requirement that the employer's decision be "pursuant to" the plan; the judge asked only whether Indiana *has* a bona fide plan. Having a bona fide plan is not enough; that plan must be applied to yield the contested decision.

Defending its judgment on appeal, the employer contends that Davis's complaint does not adequately plead that the decision was not made "pursuant to" the plan. But a complaint need not plead this; it is enough to plead the *claim* (here, that the state held Davis's age against him, and that he was at least 40 years old and thus protected by the ADEA). Section 623(j) affords the state an affirmative defense; on this subject Indiana bears the burdens of both production and persuasion. Cf. *Meachum v. Knolls Atomic Power Laboratory*, 128 S. Ct. 2395 (2008) (holding this with respect to the defenses in 29 U.S.C. §623(f)). Complaints need not anticipate, and attempt to plead around, potential affirmative defenses. See *Gomez v. Toledo*, 446 U.S. 635 (1980); *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623 (7th Cir. 2003). When *Erickson v. Pardus*, 127 S. Ct. 2197 (2007), and *Bell*

*Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), restated the requirements of Fed. R. Civ. P. 8, the Justices did not revise the allocation of burdens concerning affirmative defenses; neither *Erickson* nor *Bell Atlantic* mentions affirmative defenses in general or *Gomez* in particular.

Because this complaint was dismissed under Rule 12(b)(6), the record is silent on whether the state understands (and applies) 240 Ind. Admin. Code §1-4-18(b)(4) to permit exceptions to the maximum-age-at-rehire requirement. Davis is entitled to collect and present evidence on that question and to contend that, if the Indiana State Police sometimes rehires people at age 40 and above, the decision not to rehire him was not made "pursuant to" a bona fide plan.

The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.