# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4376

_____

Charlene Eggers, Estate of Richard Eggers

*Plaintiff - Appellant*

Richard Eggers, individually and on behalf of a putative class of similarly situated individuals, Deceased

*Plaintiff*

v.

Wells Fargo Bank, N.A.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: October 16, 2017
Filed: August 13, 2018

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

SMITH, Chief Judge.

_____

[*]Chief Judge Smith and Judge Colloton file this opinion pursuant to 8th Cir. Rule 47E.

Richard Eggers ("Richard") sued Wells Fargo Bank, N.A., alleging the bank violated the Age Discrimination in Employment Act (ADEA) in terminating his employment. The district court[1] granted Wells Fargo's motion for summary judgment. We affirm.

## I. *Background*

In 2005, Richard, then age 61, applied to work at Wells Fargo. On the job application, Wells Fargo required applicants to answer whether they had ever been convicted of any crime involving dishonesty or breach of trust. He answered "No," and a name-based background check revealed no prior conviction. Wells Fargo subsequently hired Richard for its Home Mortgage division.

In 2010, Wells Fargo switched to a more sophisticated FBI fingerprint-based background check. The bank then ordered Richard's division to undergo rescreening with the new system. Richard authorized the rescreen, and again he indicated that he had no prior convictions for crimes involving dishonesty or breach of trust. However, the new background check showed that Richard had a fraud conviction under Iowa law in 1963 and served two days in jail.

Under federal law, Richard's prior conviction bars him from working for Wells Fargo. Referred to as "Section 19," 12 U.S.C. § 1829(a)(1)(A) prohibits, *inter alia*, "any person who has been convicted of any criminal offense involving dishonesty or a breach of trust" from becoming or continuing as an employee of any institution insured by the Federal Deposit Insurance Corporation (FDIC). The statute provides stiff penalties for employer violators, including daily fines of up to $1,000,000 per day and/or five years' imprisonment. *Id.* § 1829(b). Individuals with prior disqualifying convictions under Section 19 may apply for employment waivers with

---

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

the FDIC. In addition, banking institutions wishing to hire—or to continue to employ—Section 19-disqualified individuals also may sponsor waiver applications. Disqualified individuals may not begin or continue employment with the FDIC-insured institutions prior to obtaining waivers. Section 19 expressly precludes the FDIC from granting a waiver to individuals disqualified due to certain enumerated offenses for at least ten years. All offenses older than ten years are treated the same as each other. *See id.* § 1829(a)(2)(A). In other words, Section 19 mandates that a 40-year-old conviction for a crime involving dishonesty or breach of trust disqualifies a person from FDIC-institution employment the same as does an 11-year-old conviction.

Upon learning of Richard's disqualification under Section 19, Wells Fargo acted to comply with the statute. The bank first offered him leave time to obtain a waiver, but he refused. Wells Fargo then terminated his employment. Richard then applied to the FDIC for a Section 19 waiver, which was granted. Wells Fargo offered to reinstate Richard to his prior position in the Home Mortgage division. He refused the reinstatement offer and opted to sue the bank, alleging employment discrimination in violation of the ADEA. He alleged Wells Fargo violated the ADEA by (1) refusing to sponsor Section 19 waivers and by (2) failing to provide job applicants and employees with pre-screening notice of the opportunity to obtain waivers. Specifically, Richard contended that these two practices created a disparate impact against older workers.

After two years of litigation, Wells Fargo moved in the district court for summary judgment. By then, Richard had died, and his widow, Charlene Eggers, had been substituted as the party plaintiff. The district court conducted a hearing on the summary judgment motion after briefing by the parties. It then issued a ruling in favor of Wells Fargo. The court, "[n]ow finally fully informed, . . . conclude[d] [that] plaintiff[] ha[s] no viable theories for recovery, nor [has she] disclosed or discovered facts supporting [the] pleaded claims of age . . . discrimination." *Eggers v. Wells*

*Fargo Bank, N.A.*, No. 4:14-cv-00394-CRW-SBJ, slip op. at 3 (S.D. Iowa Oct. 27, 2016), ECF No. 173. The court noted that Eggers "cited [no] legal authorities nor discovered evidence supporting [the] age discrimination claims, whether characterized as intentional discrimination or disparate impact results." *Id.* at 5. Further, the court observed that "any bank or other financial institution wisely would prefer for its customers to be served by employees who were not pre[v]iously persons convicted of crimes of dishonesty. When [Wells Fargo] learned of the conviction[], its sound business decision was to terminate . . . ." *Id.* at 4. The district court then granted Wells Fargo's summary judgment motion and dismissed Eggers's lawsuit.

## II. *Discussion*

Eggers alleges that the district court, in granting summary judgment to Wells Fargo: (1) ignored Eggers's identified discriminatory employment practices; (2) conflated disparate treatment and disparate impact law in holding that Eggers failed to make out a prima facie case of disparate impact under the ADEA; and (3) incorrectly concluded that Wells Fargo's blanket refusal to sponsor waivers and to provide notice of opportunity for Section 19 waivers was a reasonable factor other than age. We disagree and address each argument in turn.

We review the district court's grant of summary judgment de novo. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact." *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir. 1987) (citation omitted). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Torgerson*, 643 F.3d at 1042 (quoting Fed. R. Civ. P. 56(c)(2)). "Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "'Mere allegations, unsupported by specific facts or evidence beyond the nonmoving

-4-

party's own conclusions, are insufficient to withstand a motion for summary judgment.' We may affirm a district court's grant of summary judgment on any basis supported by the record." *Menz v. New Holland N. Am., Inc.*, 507 F.3d 1107, 1110 (8th Cir. 2007) (first quoting *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007), then citing *Tenge v. Phillips Modern Ag. Co.*, 446 F.3d 903, 906 (8th Cir. 2006)).

Under the disparate impact theory of employment discrimination, an employer's practice may be "fair in form but discriminatory in practice." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 645 (1989) (citation omitted). "The ADEA makes it 'unlawful for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 719 (8th Cir. 2012) (quoting 29 U.S.C. § 623(a)(1)) (ellipsis in original). "[T]he scope of disparate-impact liability under ADEA is narrower than under Title VII." *Smith v. City of Jackson*, 544 U.S. 228, 240 (2005). To establish a disparate impact claim under the ADEA,

> [a] plaintiff . . . must first establish a prima facie case . . . by identifying a specific employment practice and then presenting statistical evidence of a kind and degree sufficient to show that the practice in question caused the plaintiff to suffer adverse employment action because of his or her membership in a protected group [(employees age 40 or older)].

*Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 953 (8th Cir. 2001) (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)). "[T]he burden then shifts to the employer to produce evidence demonstrating a legitimate business reason for the challenged practice." *Id.* (citing *Watson*, 487 U.S. at 997–98).

A legitimate business reason under the ADEA is any "reasonable factor[] other than age" (RFOA). 29 U.S.C. § 623(f)(1). "Congress took account of the distinctive nature of age discrimination, and the need to preserve a fair degree of leeway for

employment decisions with effects that correlate with age, when it put the RFOA clause into the ADEA, 'significantly narrow[ing] its coverage.'" *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 102 (2008) (alteration in original) (quoting *City of Jackson*, 544 U.S. at 233). The RFOA exemption is an affirmative defense. *Id.* at 97. "[I]n cases involving disparate-impact claims[,] . . . the RFOA provision plays its principal role by precluding liability if the adverse impact was attributable to a nonage factor that was 'reasonable.'" *City of Jackson*, 544 U.S. at 239. The focus of the RFOA defense

> is that the factor relied upon was a "reasonable" one for the employer to be using. Reasonableness is a justification categorically distinct from the factual condition "because of age" and not necessarily correlated with it in any particular way: a reasonable factor may lean more heavily on older workers, as against younger ones, and an unreasonable factor might do just the opposite.

*Meacham*, 554 U.S. at 96.


### 1. *Employment Practices at Issue*

Eggers alleges that the district court misidentified the Wells Fargo employment policies that she challenges. She argues that the misidentification of the policies constituted reversible errors. Eggers challenges two policies: "(1) Wells Fargo's practice of refusing to sponsor team members' and new hires' Section 19 waiver applications and (2) Wells Fargo's practice of refusing to provide its team members and applicants with pre-screening notice of the opportunity to obtain Section 19 waivers." Appellant Br. at 21.

In its summary judgment order, the district court stated:

> To circumvent [Wells Fargo's] choice to terminate or not further employ persons convicted of crimes of dishonesty, the plaintiff[] ha[s]

added several theories: (1) *[Wells Fargo] should have given notice or helped the plaintiff[] seek and obtain exemptions from the FDIC*; (2) [Wells Fargo] should not have required [Eggers] to be fingerprinted and rescreened; (3) and *[Wells Fargo] should itself have applied to the FDIC to obtain exemptions from the Section 19 collateral consequence of the employees' convictions*.

*Eggers*, slip op. at 4 (emphases added). The court then concluded that Eggers "ha[s] neither cited legal authorities nor discovered evidence supporting [the] age discrimination claims, whether characterized as intentional discrimination or disparate impact results." *Id.* at 5.

Eggers's argument fails. The district court identified exactly the two policies Eggers challenged. Her contention on this issue is without merit, and we find no error.

### 2. *Prima Facie Case*

Eggers next faults the district court for concluding that she failed to establish a prima facie case of disparate impact discrimination under the ADEA. The district court found that Richard was disqualified for the job he held due to federal law. *See id.* at 3 ("[A]ll of the plaintiffs have been convicted of disqualifying crimes of dishonesty and therefore were lawfully not hired, or were terminated when [Wells Fargo] learned of each disqualification."). Eggers argues that the district court's reliance on *EEOC v. Con-Way Freight, Inc.*, 622 F.3d 933 (8th Cir. 2010), was misplaced. Eggers contends that the court should have relied on *Green v. Mo. Pac. R.R. Co.*, 523 F.2d 1290 (8th Cir. 1975), for guidance. We disagree.

In *Green*, the plaintiff alleged employment discrimination based on the employer's policy of disqualifying all job applicants with a conviction for any crime other than a minor traffic offense. 523 F.2d at 1292. We held that the company's "sweeping disqualification" violated Title VII because it could not meet the business

necessity test, the second prong of the *McDonnell Douglas*[2] framework. *Id.* at 1296–98. *Green*'s holding flowed directly from our decision in *Carter v. Gallagher*, 452 F.2d 315, 326 (8th Cir.), *cert. denied*, 406 U.S. 950 (1972), where the en banc court struck down a similar rule that an employer may not on its own institute a policy of "treat[ing] [a] conviction as an absolute bar to employment." *Id.* at 1297 (quoting *Carter*, 452 F.3d at 326). In *Con-Way Freight*, a Title VII disparate treatment case, we held that a plaintiff could not establish a prima facie case of discrimination because her "theft-related conviction render[ed] [her] unqualified for any position with the [employer]," pursuant to company policy. 622 F.3d at 938. Unlike the company in *Green*, Con-Way only barred persons with theft-related convictions from employment with the company. *See id.* at 935.

*Green* and *Con-Way Freight* can be read together to say that in cases where an employer's policy is not a "sweeping disqualification," such policies may preclude a plaintiff from establishing a prima facie case of disparate treatment against her employer. In contrast, in a disparate impact case where a company-initiated disqualification policy is sweeping and overbroad, the policy not only does not bar a plaintiff's prima facie case; it also fails the business necessity test. But neither *Green* nor *Con-Way Freight* addressed a statutorily mandated employment disqualification. Thus, neither is directly on point. Here, federal law—not company policy—triggers disqualification from employment.

Eggers insists that establishing job qualification is never a requirement in an ADEA disparate impact case. However, even assuming that the Section 19 disqualification does not bar Eggers's claim, Eggers failed to present statistical evidence of *any kind* that the two challenged policies created a disparate impact among Wells Fargo employees older than 40. *See Mems v. City of St. Paul, Dept. or Fire and Safety Servs.*, 224 F.3d 735, 740 (8th Cir. 2000) ("When statistical evidence

---

[2]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

is offered to show causation, the evidence must be 'of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.'" (quoting *Watson*, 487 U.S. at 994)), *abrogated on other grounds by Torgerson*, 643 F.3d at 1059. Eggers argues that she did not have the burden to produce statistical evidence in the district court because Wells Fargo did not raise the issue in its opening brief in support of the motion for summary judgment. But, to avoid summary judgment, Eggers was required "to make a showing sufficient to establish the existence of an element essential to [her] case" because "a complete failure of proof concerning an essential element of [her] case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Eggers failed to present sufficient evidence to support an essential element.

Because Eggers failed to present any statistical evidence of a disparate impact, and because we may affirm on any ground supported by the record, summary judgment for Wells Fargo is appropriate for lack of a prima facie case.

### III. *Conclusion*

Accordingly, we affirm the district court's grant of summary judgment to Wells Fargo.

_____