NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0454n.06

No. 08-4518

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Jul 26, 2010**
LEONARD GREEN, Clerk

| | |
|---|---|
| DEON COLVIN, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR THE |
| | ) NORTHERN DISTRICT OF OHIO |
| VETERANS ADMINISTRATION | ) |
| MEDICAL CENTER, | ) |
| | ) |
| Defendant-Appellee. | ) |

Before:  SILER and GIBBONS, Circuit Judges; REEVES, District Judge.[*]

**DANNY C. REEVES, District Judge.**  Deon Colvin appeals the district court's grant of

summary judgment in favor of Veterans Administration Medical Center (VAMC) on his claim that

VAMC violated Title VII of the Civil Rights Act by terminating his employment because of his race.

For the following reasons, we affirm the district court's decision.

I.

Colvin, who is African-American, began working as a staff pharmacist at VAMC's Wade

Park Medical Facility in Cleveland, Ohio, in June 2002.  His first assignment, following a seven-

week orientation, was to the midnight shift.  On this schedule, he was the only pharmacist on duty

---

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

at the facility between the hours of midnight and 8:00 a.m. Early in his employment at the Wade Park facility, Colvin had difficulty filling prescriptions in a timely manner. He also, by his own admission, made some mistakes during this initial period, including filling an order for ten *syringes* of injectable morphine with ten *boxes* of ten syringes each; failing to indicate dosage information on an insulin prescription; and failing to detect and fix an error in a physician's order for heparin, completing the order for hourly injections of the drug instead of a continuous drip. Each of these mistakes was documented and brought to Colvin's attention. Colvin, who had previously worked in retail pharmacies, attributes these early errors to his lack of experience in a hospital environment and notes that they were not repeated.

Lance Norris, who is white, began working as a staff pharmacist at VAMC's Wade Park facility on the same day as Colvin and went through the same orientation. He and Colvin had the same immediate supervisor, Henry Armbruster. While Colvin was on the midnight shift, Norris worked days. Armbruster and two VAMC employees who worked with both Colvin and Norris observed that the two pharmacists had similar problems processing orders on time. Statistical reports show that Colvin outperformed Norris in several areas, including inspections, patient counseling, and number of prescriptions filled.

After four weeks on the midnight shift, Colvin was moved to the day shift due to his unsatisfactory performance. According to two co-workers, Colvin's work improved following this change in schedule. Colvin does not recall any further criticism of his work performance until April 2003, when Armbruster informed him that he had insufficient knowledge regarding drugs and their uses and did not process prescriptions quickly enough. On May 23, 2003, Armbruster completed

a performance appraisal in which he rated Colvin's performance "unacceptable" in the areas of clinical activities and medication distribution. Colvin was also given an overall performance rating of "unacceptable." On May 28, 2003, a few days before the end of Colvin's one-year probationary period, VAMC terminated his employment. Norris, meanwhile, received no "unacceptable" ratings on his performance appraisal, and his employment with VAMC was not terminated.

Following his termination, Colvin filed a complaint against VAMC alleging breach of implied contract, intentional infliction of emotional distress, promissory estoppel, racial discrimination under Title VII of the Civil Rights Act of 1964, and racial discrimination in violation of Ohio law. VAMC moved for summary judgment on the ground that Norris was not similarly situated to Colvin and, as a result, Colvin could not make out a prima facie case of discrimination. In the alternative, VAMC argued that even if all the elements of a prima facie discrimination case were met, Colvin could not show that its stated reasons for firing him were pretextual. The district court granted VAMC's motion, finding that "Colvin and Norris, while similar in many respects, are not similar in all relevant respects because their errors are not of comparable seriousness." *Colvin v. Veterans Admin. Med. Ctr.*, No. 1:04-CV-2476, 2008 U.S. Dist. LEXIS 81250, at *8 (N.D. Ohio Oct. 14, 2008). Therefore, the court concluded, Norris was not similarly situated to Colvin, and Colvin could not establish the final element of a prima facie discrimination case. *Id.* at *15.

Colvin filed a *pro se* appeal seeking reversal of the summary judgment and remand for trial. He makes a number of arguments regarding the district court's application of the summary judgment standard and asserts that the court's factual determination regarding the seriousness of his errors was incorrect. In particular, Colvin maintains that under VAMC's performance standards, there is no

3

such thing as a "serious" or "significant" mistake, and that because he and Norris were both performing up to VAMC's standards, they must be similarly situated.

## II.

### A. Judicial Notice

Before reaching the merits of Colvin's appeal, we must address his motion to take judicial notice. Colvin asks the panel to consider a July 2003 finding by the Ohio Department of Job and Family Services that his termination was not justified. As a result of this determination, Colvin was deemed eligible for unemployment benefits for the week ending May 31, 2003. Because the Ohio agency's decision is a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), we grant Colvin's motion. However, the agency's conclusion is not dispositive and, in fact, is of no help to Colvin. As explained below, we do not reach the inquiry to which such information would be relevant.

### B. Summary Judgment

A district court's grant of summary judgment is reviewed de novo. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006) (citing *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004)). An order granting summary judgment must be affirmed "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). However, "[s]ummary judgment is inappropriate . . . 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The burden is on the party seeking summary judgment to establish that no genuine issue of material fact exists. *Id.* This burden "'may be discharged by showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (other internal quotation marks omitted)). To survive summary judgment, the nonmoving party must then offer "'significant[] probative' evidence in support of its position." *Id.* (quoting *Anderson*, 477 U.S. at 249-50 (alteration by *Wright* court)). During review of a district court's grant of summary judgment, all evidence is viewed in the light most favorable to the nonmoving party. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Moreover, because Colvin is a *pro se* appellant, his filings are given liberal construction.[1] *See Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)).

Colvin's Title VII racial-discrimination claim must be examined using the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and modified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). At the first stage of this analysis, the plaintiff must establish a prima facie case. *Burdine*, 450 U.S. at 252-53. If the plaintiff can make a prima facie showing by a preponderance of the evidence, he is entitled to a presumption of discrimination. *Id.* at 254. The burden of production then shifts to the defendant, which can overcome the

---

[1]Colvin was represented by counsel in the district-court proceedings.

presumption by showing a "'legitimate, nondiscriminatory reason'" for its actions. *Id.* at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant's explanation is "legally sufficient to justify a judgment" in its favor, the plaintiff must demonstrate that the defendant's stated reason for the adverse employment action was merely a "pretext for discrimination." *Id.* at 253, 255. The ultimate burden of proving the defendant's intent to discriminate remains with the plaintiff at all times. *Wright*, 455 F.3d at 707 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

To make a prima facie showing of discrimination, a plaintiff must establish that he or she (1) "was a member of a protected class"; (2) "suffered an adverse employment action"; (3) "was qualified for the position"; and (4) "was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Id.* (citing *DiCarlo*, 358 F.3d at 415). Here, the first three elements are not in dispute: Colvin is African-American; his employment with VAMC was terminated; and he was qualified for the position of staff pharmacist.[2] Thus, the only remaining inquiry is whether there is a non-protected employee similarly situated to Colvin who received more favorable treatment.[3]

---

[2]Colvin holds a bachelor's degree in pharmacy from Howard University and has been licensed as a pharmacist in Ohio since 1994.

[3]Although Colvin indicates that he originally intended to allege both that a similarly situated non-protected employee was treated more favorably and that he was replaced by someone outside the protected class, for purposes of the present appeal he argues only that he was treated differently than a similarly situated non-protected employee.

Colvin maintains that Lance Norris is similarly situated. He notes that he and Norris began working as staff pharmacists at the Wade Park facility on the same date, received the same orientation, and answered to the same supervisor (Armbruster). Colvin provided evidence, in the form of declarations by two VAMC employees who worked with both pharmacists, that he and Norris had at least one performance problem in common: Annette Douglas, a pharmacy technician at the Wade Park facility, and Angela Brazile, a staff nurse, stated that both Colvin and Norris had difficulty filling prescriptions in a timely manner. Minutes from a December 2002 staff meeting also suggest that Norris contributed to the pharmacy's overall problem with slow order processing. Furthermore, Armbruster acknowledged in his affidavit that Norris, like Colvin, "had some performance issues"; however, the only such issue identified by Armbruster was Norris' failure to properly document his actions. The record contains no evidence that Norris committed errors similar to Colvin's with regard to filling prescriptions.

This Court has held that "[i]n the disciplinary context, . . . to be found similarly situated, the plaintiff and his proposed comparator must have engaged in acts of '*comparable seriousness*.'" *Id.* at 710 (quoting *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002)). In assessing the relative seriousness of the employees' acts, a court may consider "whether the individuals 'have dealt with the same supervisor, have been subject to the same standards[,] and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (other internal quotation marks omitted)). While there need not be an "exact correlation" between the plaintiff and the non-protected employee who was treated

more favorably, the plaintiff must demonstrate that he and his proposed comparator are "similar in

'all of the *relevant* aspects.'" *Ercegovich*, 154 F.3d at 352 (quoting *Pierce v. Commonwealth Life

Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994) (emphasis added by *Ercegovich* court)). The court must

"make an independent determination as to the relevancy of a particular aspect of the plaintiff's

employment status and that of the non-protected employee." *Id.*

Because Colvin and Norris received starkly different performance evaluations and VAMC

cited disciplinary problems as the reason for Colvin's dismissal, whether the two employees engaged

in the same conduct is a relevant factor.[4] *See Wright*, 455 F.3d at 710. Taken in the light most

favorable to Colvin, the evidence shows that both he and Norris had problems filling prescriptions

on time. The similarities with respect to their conduct end there, however. Colvin admits that he

erroneously dispensed ten times the ordered amount of a controlled substance, failed to include

relevant dosage information on a prescription, and neglected to catch a physician's error regarding

how a drug should be administered.[5] Although Colvin argues that these mistakes — made early in

---

[4]As previously noted, Colvin was fired after receiving "unacceptable" ratings on his performance appraisal. According to Armbruster's comments on that appraisal, Colvin had "insufficient knowledge of hospital pharmacy," was "too slow processing orders," and made "too many errors." Conversely, Norris received no ratings of "unacceptable." Armbruster noted on Norris' appraisal form that documentation was "something [for Norris] to work on," but that Norris did "good work overall."

[5]Colvin points out, and the district court acknowledged, that these three mistakes occurred early in his employment with VAMC when he was working the midnight shift "and are therefore more expected or understandable." *Colvin*, 2008 U.S. Dist. LEXIS at *15. However, the reasons behind the errors are not relevant to the determination of whether Colvin and Norris are similarly situated, since despite their identical start dates, there is no evidence that Norris made any such "rookie mistakes." Likewise, whether Colvin did or did not continue to make such errors during the remainder of his employment with VAMC might be relevant at the pretext stage of the *McDonnell*

his employment with VAMC and not repeated — are not as serious or significant as VAMC claims, he nonetheless has not demonstrated that Norris "engaged in the same conduct." There is no evidence that Norris committed similar errors in filling prescriptions.

Again, while Colvin is not required to show that his proposed comparator's actions were identical to his own, Norris' conduct was of a different nature than Colvin's, and that difference is relevant. *See id.* (plaintiff and proposed comparator "cannot be considered similarly situated . . . because they engaged in different conduct, and the differences in their conduct are relevant"). Regardless of whether Colvin's mistakes resulted in any actual harm, errors in filling prescriptions could easily injure a patient or expose VAMC to liability. Norris' failure to complete paperwork does not carry the same obvious safety and legal risks. *See id.* at 711 (employer "is permitted to consider its legal obligations" when making employment decisions); *Ruth v. Children's Med. Ctr.*, 940 F.2d 662 (table), 1991 U.S. App. LEXIS 19062, at *23 (6th Cir. 1991) (pharmacists not similarly situated where both committed medication errors, but "[plaintiff's] error differed in both type and severity of potential consequences"). No improper weighing of evidence is necessary to reach the conclusion that Norris' and Colvin's disciplinary problems were not of comparable seriousness. The potential harm from their respective actions is sufficiently different to distinguish their conduct and their treatment by VAMC. *See Wright*, 455 F.3d at 710 (finding plaintiff and proposed comparator "not similarly situated because their alleged acts of misconduct are of a very different nature, and there are legitimate reasons why [the employer] would treat them differently").

---

*Douglas*/*Burdine* analysis but is of no help to him for purposes of establishing the "similarly situated" element of a prima facie case.

Colvin urges this Court to consider VAMC's performance standards, arguing that since his three identified errors were within the range of acceptable performance under the standards and Norris' performance was also acceptable as measured by the standards, they must be similarly situated. However, while the fact that both Norris and Colvin met VAMC's performance standards makes them similar on a superficial level, it does not show that they engaged in the same conduct. Colvin's errors in filling prescriptions and Norris' lapses in documentation are qualitatively different things. Moreover, even if all actions deemed acceptable under VAMC's performance standards were considered the "same conduct," the amount of harm that could have resulted from Colvin's and Norris' respective disciplinary violations is a "differentiating or mitigating circumstance[] that would distinguish their conduct or [VAMC's] treatment of them for it." *Id.* (quoting *Ercegovich*, 154 F.3d at 352 (internal quotation marks omitted)).

Because Colvin has not identified a similarly situated non-protected employee who received more favorable treatment, he cannot establish a prima facie case of racial discrimination. We therefore do not reach the question of pretext under the *McDonnell Douglas/Burdine* analysis. Colvin's evidence and arguments regarding whether his termination was justified — e.g., the finding of the Ohio Department of Job and Family Services that it was not — need not be addressed.

III.

We **AFFIRM** the district court's grant of summary judgment in favor of VAMC.