NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0339n.06

No. 10-2223

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Mar 28, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| GARRY SEGEL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| KIMBERLY-CLARK CORPORATION, a | ) | DISTRICT OF MICHIGAN |
| Delaware Corporation; KIMBERLY-CLARK | ) | |
| GLOBAL SALES, LLC, a Delaware Limited | ) | O P I N I O N |
| Liability Company, jointly and severally, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:    COOK, McKEAGUE and ROTH, Circuit Judges.[*]

**McKeague, Circuit Judge.** Garry Segel sued Kimberly-Clark, his former employer, alleging

violations of the Age Discrimination in Employment Act and Michigan's Elliot-Larsen Civil Rights

Act. The district court granted summary judgement in favor of Kimberly-Clark. On appeal, Segel

contends that the district court misconstrued the facts and improperly applied the law. For the

reasons that follow, we **AFFIRM** the district court.

## I. BACKGROUND

Appellant Garry Segel began working for Kimberly-Clark in 1985 as a sales representative.

Appellant Br. at 6. Segel's sales record was outstanding, and his annual performance reviews

_____

[*] The Honorable Jane R. Roth, United States Circuit Judge for the United States Court of
Appeals for the Third Circuit, sitting by designation.

consistently indicated that he "meets performance expectations" or "exceeds performance expectations" for his position. *See,* e.g., R.76-4, Excerpts from the Personnel File of Garry Segel.

As early as 2000, however—a year where Segel's overall performance rating "exceed[ed] expectations"—Segel was encouraged to work on being more flexible. *Id.* at 223 (noting that Segel should "continue to work on his flexibility with regards to changes which occur []at Kimberly-Clark"). As an example of "observed behavior" relating to this job skill, Segel's reviewer noted: "Very flexible in adapting to changes implemented by [customers]; [a]t times, less flexible/understanding of changes occurring in Kimberly-Clark." *Id.* at 222. Segel's 2002 evaluation again counseled him to be more flexible. *Id.* at 205. Segel's 2002 performance reviewer explained that Segel was "[a] little negative with [Kimberly-Clark] changes, but always effectively moves forward and accomplishes what needs to be done." *Id.* at 204.

Segel was promoted to Customer Business Manager III ("CBM III") in 2004. *Id.* 328. Segel's 2004 reviewer gave him an overall rating of "meets expectations" for his new position, but flexibility and interpersonal skills were rated as "does not meet" expectations. R. 74-6 at 3. The 2004 reviewer described "adaptability/flexibility" as Segel's "biggest skill opportunity." *Id.* The reviewer continued: "He becomes so focused on his objectives [that he] does not always address the other person[']s needs. His style needs to change when he receives push back." *Id.*

In 2005, Kimberly-Clark initiated a new performance appraisal system in which employees received feedback on their "Results" and their "Leadership Qualities." Appellant Br. at 5. Although Segel's overall performance rating for his "Leadership Qualities" was "Effective," many of the reviewer's comments suggested that Segel's interpersonal skills were lacking. R. 76-7, Segel 2005

Review. For example, the reviewer praised Segel as "one of the best CBM's I work with," but also cautioned that "[Segel] needs to keep an eye on his reactions during disagreements or conflict and try not to let others get under his skin. During customer presentations [Segel] has gotten confrontational with the customer." *Id.* Additionally, the reviewer noted that Segel "tends to become involved in too many disagreements where he has little to gain. If [Segel] were more selective in choosing his battles he would have more success . . . . In the future he needs to focus more on compromise and creating mutually beneficial agreements." *Id.*

In 2006, Segel's "Leadership Qualities" were rated as "improvement required." R. 76-9, Segel's 2006 Review, 141. Among other criticisms, the reviewer noted that Segel "can be inflexible when presented with new ideas and suggestions. He needs to listen to others, be more objective in sizing up situations, and be ready to adjust his approach when better ways of doing things come up." *Id.* Additionally, the reviewer noted that Segel's "inability to find positions that benefit both [the customer] and Kimberly Clark has hurt his relationship with [a] key customer." Segel was again urged "to become less confrontational with the customer." *Id.*

The "key customer" referenced in Segel's personnel review was Meijer. As of November 2006, Segel's contact at Meijer was Fiona Hein, a Senior Buyer in the baby department at Meijer. Meijer was Segel's primary customer. Additionally, because Hein was the buyer for millions of dollars of products, R. 89 at 109, keeping Hein happy was of significant importance to Kimberly-Clark.

By Segel's own account, he did not enjoy a good relationship with Hein. For her part, Hein complained to Kimberly-Clark about Segel on multiple occasions. Hein found Segel "difficult to

work with" in a variety of contexts, and she registered her concerns with multiple layers of management at Kimberly-Clark. Ultimately, Hein informed Kimberly-Clark management that she would prefer to work with someone other than Segel.

On April 10, 2007, Kimberly-Clark placed Segel on a 90-day "Performance Improvement Plan" ("PIP") to improve his leadership skills. The PIP cited a decline in Segel's leadership skills and a "negative and confrontational style which has an adverse effect on the [Kimberly-Clark] Team." R. 76-10, Performance Improvement Plan for Segel. The PIP also referenced comments from Segel's customers "who have expressed an unwillingness to have [Segel] contact them" because "he is hard to work with." *Id.* Notably, the PIP referenced Segel's problematic relationship with Hein, and attributed the following comments to her: "[Segel] doesn't get it, I can't work with him, He can't figure it out, your competition figures it out, he asks too many questions and delays." *Id.*

The PIP identified eight areas for Segel to improve, including the need for Segel "to become more flexible in his dealings with the Customer and his Team." *Id.* Finally, the PIP warned that "[f]ailure to complete this Plan successfully and maintain acceptable performance may result in employment action up to and including termination of employment." *Id.*

Segel did not successfully complete his PIP because he continued to demonstrate inflexibility. R. 76, Ex. 16, Segel's Last Chance Agreement. Instead of being terminated, however, Kimberly-Clark and Segel agreed to a 30-day Last Chance Agreement ("Agreement") on July 10, 2007. *Id.* The Agreement allowed Segel 30 days to "become more flexible in his dealings with the Customer and his Team." *Id.* The Agreement concluded:

> [Segel] is fully aware and agrees that continuation of employment is dependent upon successful completion of the above described plan and his continuing to sustain improvement if this plan is completed. [Segel] understands that if he does not meet this Action Item or later fails to sustain his performance, he will be terminated from employment with the Company. This Agreement does not alter the otherwise at-will relationship between . . . Segel and Kimberly-Clark.

*Id.* Segel failed to satisfactorily complete the Agreement, and on or about August 13, 2007, Segel was terminated. R. 15, Defendant's Answer, at 7.

Segel filed a timely charge with the Equal Employment Opportunity Commission ("EEOC"). R. 111 at 2. Segel also sued Kimberly-Clark for violating the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1) (2006), and Michigan's Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2202 (LexisNexis 2011). R. 11, Am. Compl. Segel alleged that, because he was 53 years old, Kimberly-Clark (i) unfairly evaluated his performance, (ii) placed him on a PIP, and (iii) terminated his employment. *Id.* In support of his claim, Segel argued that the existence of other age discrimination cases pending against Kimberly-Clark constituted relevant pattern-or-practice evidence. *Id.*

At the close of discovery, Kimberly-Clark moved for summary judgment. The district court heard oral argument and requested supplemental briefs regarding Segel's argument that the existence of several other age discrimination cases pending against Kimberly-Clark was relevant pattern-or-practice evidence. The district court granted Kimberly-Clark's motion for summary judgment on August 31, 2010. This timely appeal followed.

On appeal, Segel contends: (1) the district court erred in finding the only facts establishing Segel's age discrimination claim were those surrounding his replacement; (2) the district court erred

in finding Segel's rebuttal of Kimberly-Clark's legitimate business reasons for his treatment and termination insufficient to establish pretext; (3) the district court erred in determining Segel failed to show circumstances tending to prove age discrimination was more likely than not the reason for his treatment and termination; and (4) the district court misconstrued Sixth Circuit law by holding Segel to an improperly high proof requirement.

## II.  ANALYSIS

Standard of Review

This Court reviews *de novo* a district court's grant of summary judgment.  *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).  Summary judgment is proper when the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court must view the facts and construe inferences in the light most favorable to the nonmoving party.  *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011).

Relevant Law

The Age Discrimination in Employment Act of 1967 (the "ADEA") makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  Subject to exceptions not applicable here, ADEA protection applies to "individuals at least 40 years of age."  *Id.* at § 631(a).  "An employee may establish a claim under the ADEA by offering either direct or circumstantial evidence of age discrimination."  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997).

"*McDonnell Douglas* and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)(omission in original)(quoting *St. Mary*'s *Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). The *McDonnell Douglas* framework proceeds in three stages: First, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the challenged action. *Id.* Third, if the defendant satisfies its burden, the plaintiff is then "afforded a fair opportunity to show that [defendant's] stated reason . . . was in fact pretext." *Id.* at 804.

The parties agree for the purposes of this appeal that Segel established a prima facie case of age discrimination. Plaintiff-Appellant Br. at 29; Defendant-Appellee Br. at 25 n.9. Kimberly-Clark addressed the second *McDonnell Douglas* prong by explaining that it terminated Segel because "an important part of his position as a CBM was to develop and maintain strong relationships with Kimberly-Clark's customers," and Segel's "confrontational style adversely impacted his relationship with his customer." Defendant-Appellee Br. at 26. In response, Segel argues that Kimberly-Clark's stated reasons for his termination are pretext for age discrimination. Plaintiff-Appellant Br. at 31.

Segel has not alleged any direct evidence of age discrimination. Accordingly, Segel must establish pretext through circumstantial evidence. *Geiger*, 579 F.3d at 620. Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to

draw a reasonable inference that discrimination occurred." *Id.* Segel has the burden of demonstrating that age was the "but-for" cause of Kimberly-Clark's adverse action. *Id.*

To establish pretext, Segel must prove that: (1) Kimberly-Clark's reasons for his termination had no basis in fact; (2) Kimberly-Clark's proffered reasons did not actually motivate Segel's discharge; or (3) Kimberly-Clark's reasons were insufficient to motivate Segel's discharge. *Manzer v. Diamond Shamrock*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Segel's brief addresses the *Manzer* factors by arguing that "[t]here is a plethora of evidence which indicates that the proffered basis for Segel's termination is not based in fact, is not worthy of credence or was insufficient to justify termination." Plaintiff-Appellant Br. at 33. Rather than analyze each factor in turn, Segel offers a five-page long list of allegations and leaves it to this Court to sift through his laundry list and ascertain which fact is meant to apply to each factor. *See id.* at 33-38. Below, we identify the most salient points from both Segel's brief and the record that best support Segel's ADEA action.

Factor One

First, Kimberly-Clark's reasons for Segel's termination are richly supported by the record. Segel's annual performance reviews persistently expressed concern regarding Segel's inflexibility toward his colleagues and his clients as early as 2000. When Segel's 2006 performance review indicated a heightened level of dissatisfaction with Segel's inflexibility, Kimberly-Clark provided Segel with both a 90-day PIP and a 30-day Last Chance Agreement to improve his behavior. Both documents highlighted Segel's inflexibility as the reason for Segel's probationary status with Kimberly-Clark and made clear that Segel's failure to improve would result in termination.

Segel does not dispute this record. Rather, he emphasizes his track record as an exemplary salesman. *See* Plaintiff-Appellant Br. at 33-38. This effort, however, does not undermine the well-supported factual basis that Kimberly-Clark provided as a foundation for Segel's termination. As such, Segel's efforts to establish the first *Manzer* prong are unavailing.

Factor Two

Second, Segel argues that Kimberly-Clark's proffered reason for termination – Segel's inflexibility – did not actually prompt Kimberly-Clark's adverse employment action. In support of this point, Segel argues that "flexibility" is an entirely subjective criterion, and that "[s]ubjective assessments are easily susceptible to manipulation in order to mask the interviewer's true motivations." *Id.* at 37. Segel cites two cases in support of this proposition: *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008), and *Meacham v. Knolls Atomic Power Lab*, 554 U.S. 84 (2008). Neither case is persuasive.

In *White*, an African-American employee appealed the district court's grant of summary judgment in favor of his prior employer. 533 F.3d at 384. The employee in this case had received stellar performance reviews and was interviewed for an internal promotion; ultimately, however, another candidate was selected for the job. *Id.* at 386-87. The employer explained that the other candidate was selected because the interviewers considered the employee "extremely aggressive" and "confrontational." *Id.* at 387. This Court reversed the district court's grant of summary judgment, holding that:

> any evaluation of [plaintiff's] interview performance is an inherently subjective determination, and thus easily susceptible to manipulation in order to mask the interviewer's true reasons for making the promotion decision. Indeed, since the very

> issue in dispute is whether the reasons given by these interviewers for their decision should be believed, it would be highly inappropriate for us to assume . . . that their own subjective perceptions of [plaintiff] were accurate.

*Id.* at 394. Accordingly, this Court found that a jury could reasonably disbelieve the employer's proffered explanation and that the employee's case was entitled to go forward.

The facts in this case are distinguishable from *White.* The record in this case presents a longstanding concern with Segel's flexibility; whereas the adverse employment decision in *White* occurred in a vacuum of otherwise glowing reviews, Kimberly-Clark's decision to terminate Segel took place after years of documented concerns regarding his flexibility. Further, the plaintiff in *White* was interviewed by only four people on one occasion, whereas Segel was evaluated by a greater number of individuals on multiple occasions over the course of many years. So, even though a subjective term like "aggressive" was not a sufficiently clear motivating factor in *White*, we find that a similarly subjective term—"inflexible"—is adequate where it was repeatedly utilized by varying people on numerous occasions.

This case is much more similar to *Chen v. Dow Chemical Company*, 580 F.3d 394 (6th Cir. 2009). In *Chen*, the employee "struggled to fit in socially," and "[b]oth coworkers and customers found her combative . . . ." *Id.* at 397. After the employer documented these interpersonal problems in the employee's performance reviews, the employee was put on a PIP, and ultimately terminated. *Id.* at 398. The employee appealed the district court's grant of summary judgment by arguing that the employer's reason for termination was pretextual. *Id.* at 401. This Court rejected the employee's argument: "When an employer reasonably and honestly relies on particularized facts in making an

employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless." *Id.*

Like in *Chen*, Segel's performance problems were documented in his reviews and his PIP. When Kimberly-Clark subsequently terminated Segel, its decision was based on documented "particularized facts" that Segel consistently failed to be appropriately flexible with his customers and his colleagues.

Segel's reliance on *Meacham* is also unavailing. In *Meacham*, an employer laid off 31 employees as a result of an involuntary reduction in force. 554 U.S. at 87. Thirty of these employees were at least 40 years old, and twenty-eight of them alleged a disparate-impact violation of the ADEA. *Id.* at 88. The employer explained that it selected employees for layoff based on their supervisors' evaluation of employees' performance, flexibility, and critical skills, thereby articulating a "reasonable factors other than age" ("RFOA") affirmative defense under § 623(f). *Id.* at 88. In response, the employees "relied on a statistical expert's testimony to the effect that results so skewed according to age could rarely occur by chance; and that the scores for 'flexibility' and 'criticality,' over which managers had the most discretionary judgment had the firmest statistical ties to the outcomes." *Id.* at 88-89. A jury found in favor of the plaintiffs, but the Court of Appeals reversed, finding that the employee had not carried the burden of persuasion with regard to the reasonableness of the employer's non-age factors. Ultimately, the Supreme Court vacated and remanded, holding that an employer defending a disparate impact claim under the ADEA bears both the burden of production and the burden of persuasion for the RFOA affirmative defense under § 623(f). *Id.* at 102.

Like the plaintiffs in *Meacham*, Segel makes a statistical argument in support of his pretext

argument, arguing that his case represents one of many similar cases against Kimberly-Clark. *See*

Plaintiff-Appellant Br. at 42. This, however, is where the similarities between the two cases end.

Segel was not laid off as a result of a reduction in force; he was laid off because of poor work

performance. Additionally, whereas the *Meacham* case utilized a statistical expert to buttress their

claims, Segel fails to marshal any meaningful statistical evidence. Kimberly-Clark makes the point

well:

> Segel's identification of 105 unadjudicated EEOC charges filed against Kimberly-Clark and its various subsidiaries throughout the United States over the past five years is meaningless. Indeed, Segel fails to set forth any comparative data (such as the total number of Kimberly-Clark employees, the number of employees under 40 who have been terminated, the number of Kimberly-Clark employees who are over 40 who have not filed charges, the entity which employed the charging party, *etc.*) from which the court could determine whether the 105 charges suggest anything, much less a pattern of age discrimination across the approximately 56,000 employee organization of a Fortune 150 company. In the absence of any context for these charges, the mere fact the charges themselves exist is not a 'statistic' and has no probative value with respect to the pretext inquiry.

Defendant-Appellee Br. at 41-42. Kimberly-Clark also correctly noted that "Segel fails to advise

the Court that the EEOC has not found reasonable cause to conclude that Kimberly-Clark violated

the ADEA in any of the 105 charges identified." *Id.* at n. 16. As such, Segel's reliance on *Meacham*

is unpersuasive.

Segel also complains that his 2006 performance review was "manipulated" and inaccurate.

Plaintiff-Appellant Br. at 33. Toward that end, Segel appears to be arguing that discrimination can

be inferred from (1) the fact that his supervisor "manipulated" his rankings; (2) that "Hein had no

complaints about Segel in 2006," and therefore his 2006 evaluation was inaccurate; and (3) that

"Hein did not corroborate" his supervisors' concerns. *Id.* at 33-38. In addition, Segel claims that "he was treated differently compared to his counter-part, Mancinelli, who was substantially younger than him, had fewer responsibilities, and had an overall lower score on the 2006 Performance Appraisal." *Id.* at 29.

Kimberly-Clark admits that Segel's supervisor "incorrectly transcribed a numerical ranking," Defendant-Appellee Br. at 31. Nonetheless, as Kimberly-Clark points out, "the record is devoid of any evidence that the mistake was motivated by a discriminatory animus," and the numerical ranking had no bearing on the numerous critical comments regarding Segel's inflexibility. *Id.* at 31-32. In this context, even an "undeniably suspicious" alteration is "ultimately irrelevant." *Geiger*, 579 F.3d at 625.

Second, Segel complains that "Hein testified that she had no complaints about Segel in 2006." Plaintiff-Appellant Br. at 34. The record confirms that Hein, who had only worked with Segel for two months at that point, had not complained about Segel in 2006. R. 89 at 105. Because the Kimberly-Clark supervisor who completed Segel's review admits that he does not remember when he started receiving complaints from Hein, this does not raise a genuine dispute over a material fact. Segel maintains that this "temporal disconnect" is evidence that Kimberly-Clark retroactively justified its actions and suggests that this provides circumstantial evidence of age discrimination. Plaintiff-Appellant Br. at 34.

The record simply does not support this argument. First, given that Segel's 2006 evaluation did not take place until March 31, 2007, R. 76-9 at 141—three full months into 2007—it is possible that Hein's complaints from early 2007 seeped into Segel's 2006 performance review. Second, Hein

is never mentioned in Segel's 2006 review – the review only references Segel's need to improve his relationship with Meijer, and Hein reported that her predecessor likewise experienced difficulty with Segel. Ultimately, however, Segel fails to make a cognizable allegation of circumstantial discrimination given that Hein's deposition thoroughly supports the conclusion that she experienced significant difficulties while working with Segel. As Hein's testimony makes clear, she found Segel "difficult to work with" and requested the opportunity to work with someone else at Kimberly Clark. Accordingly, even assuming the 2006 evaluation prematurely referenced events from 2007, as Segel alleges, Hein's deposition thoroughly corroborates Kimberly-Clark's position that Segel's interpersonal difficulties with Hein animated Kimberly-Clark's decision to terminate Segel. Accordingly, Segel's arguments that "Hein did not corroborate" his supervisor's criticisms, Plaintiff-Appellant Br. at 37, are likewise belied by the record.

Finally, we consider Segel's assertion that Kimberly-Clark treated him differently from his younger colleague, Mancinelli. For Segel to use Mancinelli to establish pretext through *Manzer*'s second option, Segel has the burden of establishing that Mancinelli is similar in "all of the relevant aspects." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). Among other things, Segel must prove that he and Mancinelli engaged in the same conduct which served as the basis for his termination, but that he was the only one who suffered an adverse employment action. *See Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454 (6th Cir. 2010) ("This Court has held that in the disciplinary context, to be found similarly situated, the plaintiff and his proposed comparator must have engaged in acts of comparable seriousness.") (internal alterations and citations omitted). In this case, then, Segel must establish that Mancinelli had the same interpersonal

shortcomings that served as the basis for Segel's termination. Mancinelli's 2006 annual review makes clear that this is not the case. Accordingly, Segel fails to identify a comparator at Kimberly-Clark to establish circumstantial evidence of discrimination.

Prong Three

Segel also complains that Kimberly-Clark's stated reasons for Segel's termination were insufficient to motivate the adverse employment action. Plaintiff-Appellant Br. at 33-38. In support of this claim, Segel repeatedly references his excellent sales record. *Id.* As this Court made clear in *Chen*, 580 F.3d at 401, an employee's interpersonal difficulties are sufficient grounds for an adverse employment action. *See also Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010).

## III. CONCLUSION

Because Segel failed to satisfy any of the *Manzer* prongs, Segel did not establish that Kimberly-Clark's adverse employment action was pretextual. As such, Segel did not demonstrate that age was a "but-for" cause for his termination. Accordingly, we **AFFIRM** the district court.