NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0049n.06

No. 21-3444

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MONICA BUSH, | ) | |
| Plaintiff-Appellant, | ) | **FILED** |
| | ) | Jan 26, 2022 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| PROMEDICA TOLEDO HOSPITAL, INC., | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| Defendant-Appellee. | ) | OHIO |
| | ) | |
| | ) | |

Before: BATCHELDER, WHITE, and BUSH, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Monica Bush worked at ProMedica Toledo Hospital in Ohio as a patient-registration specialist. Citing several violations of company policy, ProMedica terminated her employment. Bush sued ProMedica in federal court for racial discrimination and retaliation under Title VII and Ohio law. The district court granted summary judgment to ProMedica. We AFFIRM.

## I.

In 2013, Bush began working at ProMedica as a Registration Specialist. Her job was to register patients and place them in the correct rooms. ProMedica provided two on-site parking lots for employees and assigned Bush to one of those lots to park her car. ProMedica's official policy requires its employees to park in their assigned parking lots and prohibits them from parking anywhere else, including on the surface parking lot next to the Emergency Room (the "ER parking

lot"). ProMedica's security officers monitor the ER parking lot to keep the parking spaces available for patients who require emergency care.

In 2017, Bush was responsible for registering patients in ProMedica's Emergency Room department (the "ER"). Early in the morning on June 30, 2017, Bush parked in the ER parking lot, clocked in to start her shift, and planned—after clocking in—to leave her workstation to remove her car from the ER parking lot. As Bush was leaving the ER parking lot to clock in, Tiffany Allore, a ProMedica security officer, asked Bush to move her car. Bush responded that she would move her car after she clocked in. As Bush was returning to her car after clocking in, Allore warned Bush not to park in the ER parking lot again. Bush, apparently offended, told Allore "to stop watching me like I'm her woman and that I have a man."

Bush removed her car from the ER parking lot, but Allore and another security officer (named John) confronted Bush about her previous comment to Allore. According to Bush, John demanded to see her badge, but she refused because she did not know John and he was not wearing a security-officer uniform. Eventually, Bush put John and Allore on the phone with the patient registration office and everyone returned to work.

Bush and Allore filed complaints against each other. Bush sent an e-mail to Don Sullivan, the director of security for ProMedica, complaining about Allore's conduct and John's incompetence as head of security. Bush also suggested they had mistreated her because of her race, noting "maybe if I was a different color of skin he would [have] handled the situation differently." Bush also said that she copied her supervisor, Christopher Steinmiller, on the e-mail to Sullivan.[1] Allore sent an e-mail to human resources ("HR") complaining about Bush's comment

---

[1] The e-mail itself does not show that Bush included Steinmiller on her complaint to Sullivan, but Bush insisted that she sent the complaint to Steinmiller too.

to her. Allore felt that Bush's comment was derogatory and offensive, and approximated a hate crime.

Sometime later, Bush met with Steinmiller to discuss the ER parking lot incident. Steinmiller explained to Bush that she cannot park in the ER parking lot, and Bush admitted that she understood that she could not park there. During the meeting, Bush also complained to Steinmiller that other hospital employees parked in the ER parking lot, but Steinmiller said that he is only responsible for his employees and where they park. Bush never gave Steinmiller any names of employees in registration who parked in the ER parking lot.

On July 16th, as Bush was registering a patient, the attending physician entered the room and, without waiting for Bush to finish registration, started talking to the patient. With the patient and physician still in the room, Bush told the physician that it only takes seconds to register the patient and that once the process is completed, the physician has the rest of the time to care for the patient. The physician complained to HR about Bush's comment.

After another two weeks passed, Steinmiller issued a written corrective action to reprimand Bush for her conduct on June 30th and July 16th. The corrective action cited Bush's parking in the ER parking lot, her comment to Allore, and her comment to the physician on July 16th. The corrective action warned that further behavioral issues could result in termination. On July 27th, Steinmiller met with Bush to discuss the corrective action and to reiterate that Bush must park in her assigned parking lot even if it meant "just tak[ing] a tardy." According to Bush, it was at this meeting that she complained to Steinmiller about what she believed was racially discriminatory treatment of her by the security officers. Bush did not appeal the corrective action.

Several weeks passed without incident. Then, on the morning of September 27th, Bush parked her car in the ER parking lot again. Bush clocked in, left her workstation to remove her

car from the ER parking lot, and parked her car on a side street off ProMedica's campus, but near the ER. Bush later alleged that she felt uncomfortable parking in the dark, empty parking lot that ProMedica assigned her. Bush also alleged that she parked her car on the side street because of overcrowding in her assigned parking lot.

About a week later, on October 3rd, Steinmiller met with Bush about her parking in the ER parking lot and on the nearby side street. Steinmiller explained to Bush that employees who park off ProMedica's campus violate hospital policy. He also reminded her that ProMedica requires employees to park in their assigned lot, not the ER parking lot.

Bush denied that she had parked in the ER parking lot but admitted to parking on the side street. Bush expressed a concern to Steinmiller that people in security were conspiring to get her terminated for what she said to Allore on June 30th, and she opined that the whole situation with the security officers was a civil-rights issue. Steinmiller encouraged her to contact HR if she felt that her civil rights had been violated in any way, but she never did. Steinmiller also told Bush that he would review the security video to determine if she had parked in the ER parking lot.

The security video footage confirmed that Bush had parked in the ER parking lot, clocked in, and left work to move her car. Steinmiller terminated Bush's employment for violations of company policy that included falsifying records, failure to observe parking policies, leaving work without permission, and wasting company time. Steinmiller advised Bush of her termination on October 8th.

Bush appealed through ProMedica's internal grievance process. Everyone who had a say in the grievance process voted to uphold Bush's termination, including a panel of five randomly selected ProMedica employees. Bush filed a complaint with the Ohio Civil Rights Commission,

but the Commission dismissed her complaint after finding it improbable that ProMedica did anything unlawful.

Bush sued ProMedica in federal court, bringing claims under federal and state law for racial discrimination and retaliation. The district court granted summary judgment to ProMedica, and Bush timely appealed.

## II.

### A. Standard of Review

"We review the district court's grant of summary judgment de novo." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 835 (6th Cir. 2012) (citation omitted). A defendant moving for summary judgment must demonstrate the "absence of a genuine issue of material fact" in all essential elements of the plaintiff's claims and that the defendant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). We draw all reasonable inferences in favor of the plaintiff, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). And unless the plaintiff "show[s] specific facts that reveal a genuine issue for trial," *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014), summary judgment is appropriate, *Catrett*, 477 U.S. at 322–23.

### B. Racial Discrimination

Bush claims that ProMedica discriminated against her in violation of Title VII. Because Bush's discrimination claim relies on indirect evidence of discrimination, we apply the *McDonnell Douglas* burden-shifting framework. *See Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 390 (6th Cir. 2009); *Miles v. South Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020). The initial burden is on Bush to establish her prima facie case for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Bush establishes her prima facie case, the

burden shifts to ProMedica to offer a legitimate, nondiscriminatory reason for Bush's termination. *Id.* If ProMedica offers a legitimate reason, the burden shifts back to Bush to show that the proffered reason was pretext for discrimination. *Id.* at 804.

To establish a prima facie case of discrimination, Bush must show that she was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and (4) replaced by a person outside the protected class or treated differently than similarly situated nonminority employees." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016).

ProMedica contests only the fourth element—that it treated Bush differently from similarly situated nonminority employees.[2] To qualify as similarly situated, the nonminority employees "must be similar in all of the *relevant* aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quotation marks omitted). The relevant aspects usually include whether the comparator employees had the same supervisor, worked under the same standards, and engaged in the same conduct as the plaintiff's, "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). "Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated[.]" *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004). The district court concluded that Bush had not presented sufficient evidence to establish her prima facie case for racial discrimination.

---

[2] The district court concluded that Bush did not provide sufficient evidence to show that ProMedica replaced Bush with a white employee. On appeal, Bush mentions in a footnote of her brief that ProMedica replaced her with a white employee. But Bush never developed this argument further, and thus it is waived. *See United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007) (citations omitted).

On appeal, Bush protests that her testimony does establish the fourth element of her prima facie case, describing the various ways that ProMedica treated her differently from white employees. She relies on her deposition testimony, in which she said that several white employees parked in the ER parking lot and on side streets off campus. She also testified that a white employee, Sarah Maze, left her workstation to go to the parking lot while on the clock.

We are not persuaded. Bush's testimony fails to establish a prima facie case because she fails to identify the comparable employees who parked in the ER lot or to provide sufficient information to permit a comparison analysis. Bush refers vaguely to clerks, nurses, and doctors who she says parked in the ER parking lot, but without more, we cannot determine who these employees are or whether they are comparable. *See Fuelling v. New Vision Med. Lab'ys LLC*, 284 F. App'x 247, 255 (6th Cir. 2008) (finding that the plaintiff did not establish a prima facie case because the plaintiff failed to identify comparable employees with sufficient specificity to determine whether they were similarly situated). As the district court found, "[w]ithout even knowing who the comparable individuals are, it is virtually impossible to determine that they are similarly situated to plaintiff." We agree.

Bush does identify one employee, Sarah Maze, who, as Bush tells it, left her workstation on several occasions to go to the parking lot while on the clock. Although Bush did not set forth facts identifying Maze's official position, official supervisor, or experience, an affidavit from Shannon Ducat, Metro Director of Patient Registration—attached to ProMedica's motion for summary judgment—stated that "Sarah Maze, a Patient Registration Specialist at [ProMedica], has been disciplined for attendance issues." While this affidavit shows that there may be some similarities between Bush and Maze—they had the same job title and faced discipline—it is impossible to tell whether the discipline was of a similar severity. What is more, Bush failed to

show that Maze engaged in the same conduct that Bush did. ProMedica terminated Bush for violating parking policy, not just leaving her workstation while on the clock. Indeed, Bush herself could not say whether Maze parked in the ER parking lot before clocking in as Bush did. On this scant and incomplete evidence, a reasonable jury could not find that Maze or these unnamed employees were similarly situated to Bush. *See Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 458–59 (6th Cir. 2010) (finding that the plaintiff did not establish a prima facie case because the comparator employees did not engage in similar conduct). Therefore, Bush failed to establish her prima facie case, and we need not address her claims that ProMedica's reasons for discharging her were pretextual.[3]

## C. Retaliation Claim

Bush also claims that ProMedica retaliated against her in violation of Title VII. "In addition to prohibiting discrimination, Title VII prohibits retaliation against an employee for engaging in conduct protected by Title VII." *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019). As with Bush's discrimination claim, we apply the *McDonnell Douglas* burden-shifting framework to analyze Bush's retaliation claim because it relies on indirect evidence. *Id.*

### 1. Prima Facie Case for Retaliation

First, Bush must establish her prima facie case for retaliation. To do so, she must show that "(1) she engaged in activity protected under Title VII; (2) [ProMedica] knew that she exercised her protected rights; (3) an adverse employment action was subsequently taken against her; and

---

[3] Because Ohio courts apply the *McDonnell Douglas* burden-shifting framework to discrimination claims, the district court did not err in granting summary judgment to ProMedica on Bush's state-law discrimination claim. *See Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 668 (6th Cir. 2000).

(4) [Bush's] protected activity was the but-for cause of the adverse employment action." *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020).

The parties contest only the fourth element—that Bush's complaints caused her termination. Bush's argument relies on temporal proximity alone to establish but-for causation between her complaints and her termination. But we require more evidence than temporal proximity to support an inference of but-for causation. *Id.* at 448–49; *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) ("[T]emporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." (quotation omitted)). While we allow for exceptions to this rule, they "are rare, even in instances involving relatively short time periods." *Kenney*, 965 F.3d at 449 (quotation omitted).

Here, other than temporal proximity, there is no evidence that Bush's complaints were but-for causes of her termination. Bush submitted three complaints, one in the form of an e-mail to Sullivan (with Steinmiller allegedly copied) on June 30th, and two as oral complaints to Steinmiller on July 27th and October 3rd during meetings that ProMedica supervisors initiated to reprimand Bush for behavioral issues.

The record does not support an inference that Bush's complaints caused her termination. Bush has pointed to no evidence other than temporal proximity that Steinmiller fired her because of these complaints. In fact, Steinmiller's conduct shows that he wanted Bush to get the proper assistance in resolving her concerns about her civil rights. As the district court noted, and as Bush does not dispute, Steinmiller encouraged Bush to contact HR to voice her concerns, which cuts against the inference that Steinmiller terminated her employment because of her complaints. *See Kinney*, 965 F.3d at 449 (dismissing a retaliation claim when "[a]ll things considered, there [wa]s nothing unusually suggestive about the timing of [] termination") (quoting *MacDonald v. United*

*Parcel Serv.*, 430 F. App'x 453, 465–66 (6th Cir. 2011)).  Bush has failed to establish her prima

facie case for retaliation, and we therefore need not address her claims of pretext.[4]

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[4] Because Ohio courts apply the *McDonnell Douglas* burden-shifting framework for retaliation claims, the district court did not err in granting summary judgment to ProMedica on Bush's state-law retaliation claim. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008).